**Charles M. CORWIN, et al., Appellants,**

v.

**John F. LEHMAN, Jr., Secretary of the Navy, et al., Appellees.**

**Appeal No. 83–925.**

United States Court of Appeals, Federal Circuit.

Jan. 9, 1984.

Pennrose L. Albright, Arlington, Va., for appellants.

Louis R. Davis, Washington, D.C., for appellees.

Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence, Asst. U.S. Attys. and Patricia D. Goodrich, Sp. Asst. U.S. Atty., Washington, D.C., were on the brief, for appellees; Patricia M. Gormley, Commander and Ronald R. Winfrey, Lieutenant Commander, Dept. of the Navy, Washington, D.C., of counsel.

Before MARKEY, Chief Judge, and FRIEDMAN and RICH, Circuit Judges.

FRIEDMAN, Circuit Judge.

This appeal challenges a regulation of the Secretary of the Navy pursuant to which the appellants, Naval Reserve officers, were involuntarily transferred from the Ready Reserve to the Standby Reserve because they had reached the maximum age for officers of their grade. We uphold the regulation and therefore affirm the district court's dismissal of the complaint.

I

Under a regulation of the Department of the Navy, Reserve officers who reach a specified age in a specified grade are to be transferred from the Ready Reserve to the Standby Reserve. Bureau of Naval Personnel Manual, art. 1880160.1b(1) (1978). The maximum age in grade ranges from 40 for Ensigns and Lieutenants junior grade to 58 for Commanders, Captains, and Warrant Officers. *Id.* The results of such a transfer to the Standby Reserve are that the transferred officers will not be eligible to be considered for promotion or to receive pay, allowances, or retirement point credit for participation in Naval Reserve activities. 10 U.S.C. §§ 1334, 5891 (1982).

Each of the five appellant Reserve officers was involuntarily transferred from the Ready to the Standby Reserve on October 1 in the next fiscal year following the year in which he reached his maximum age in grade. At the time of such transfers, three of the appellants (two Captains and one Commander) were 58, one of them (a Lieutenant Commander) was 52, and one (a Lieutenant) was 46. One of the transfers took place in 1978, three in 1979, and one in 1980.

In March 1982 the appellants filed a complaint in the United States District Court for the District of Columbia, seeking (1) a declaratory judgment that their transfers to the Standby Reserve were illegal and void, (2) injunctive relief, including restoration to the positions they would have had if they had not been transferred, and (3) damages. They invoked the jurisdiction of the district court under a number of statutes, including 28 U.S.C. § 1346 (1976).

The complaint alleged that, as applied to the appellants, the age-in-grade regulation violated 10 U.S.C. § 280 (1982) because it was inconsistent with standards and policies of the Secretary of Defense prohibiting age discrimination and because it violated the statutory requirement that the regulations for all Reserve components should be uniform as far as practicable. The appellants sought to prosecute the suit as a class action on behalf of all Naval Reserve officers who had been involuntarily transferred to the Standby Reserve pursuant to the age-in-grade requirements. (The district court did not decide the request for class action certification.) The appellants also alleged that their transfer violated "the purpose of" the Age Discrimination in Employment Act. 29 U.S.C. §§ 621–634 (Supp. V 1981).

The government moved to dismiss for lack of jurisdiction and the appellants' failure to exhaust administrative remedies. The district court treated the motion as one for summary judgment and granted it upon other grounds. The court held that the age-in-grade requirements were "rationally related to the Navy's paramount interest in maintaining a reserve force of optimum capability" and did not violate the requirement in section 280 that Reserve regulations be uniform among the services "[s]o far as practicable" because there was no "demonstrable abuse of discretion by the Navy in departing from regulations in force in its sister services" containing different age-in-grade standards.

The appellants appealed to the Court of Appeals for the District of Columbia Circuit. On the government's motion (to which the appellants did not object), that court transferred the case to this court pursuant to 28 U.S.C.A. § 1631 (Supp.1983). It ruled that under the Federal Courts Improvement Act of 1982, we have exclusive jurisdiction over the appeal because the district court's jurisdiction was based "in whole or in part" on 28 U.S.C. § 1346(a)(2). 28 U.S.C.A. § 1295(a)(2) (Supp.1983). Both parties agree that we have jurisdiction over the appeal, and our independent examination of the issue confirms that conclusion.

## II

The government makes two preliminary challenges to the district court's entertainment of this case.

First, it argues that the Age Discrimination in Employment Act, which was one of the bases upon which the appellants invoked the jurisdiction of the court, does not apply to naval reservists. As we understand the appellants' argument, however, it is not that the Navy's age-in-grade limits actually violate that Act, but rather that they violate the spirit and policy of the Act. In any event, the other jurisdictional grounds upon which the appellants relied were sufficient.

Second, the government contends that the appellants had not exhausted their administrative remedies by presenting their claims to the Navy's Board for the Correction of Military Records. Since we have concluded that the district court correctly dismissed the appellants' suit, we pretermit this thorny question and proceed directly to the merits.

## III

A. The authority of the Secretary of the Navy to establish the age-in-grade standards and provisions here challenged is set forth in 10 U.S.C. §§ 1003, 280 (1982). Section 1003 provides in pertinent part:

A reserve officer who has passed the maximum age prescribed for his grade and classification may, as prescribed by the Secretary concerned—

. . . .

(2) be retained in, or transferred to, an active or inactive status; . . . .

Section 280 provides that "[s]ubject to standards, policies, and procedures prescribed by the Secretary of Defense, the Secretary of each military department shall prescribe such regulations as he considers necessary to carry out" specified chapters and sections of title 10, including section 1003. Section 280 further states that, "[s]o far as practicable, regulations for all reserve components shall be uniform."

■ These two sections together give the Secretary of the Navy broad discretion to set age in grade limitations for Reserve officers and to determine the treatment of Reserve officers who do not meet those standards (subject to the uniformity requirement, discussed below). Congress contemplated and intended that the Secretaries of the different services would prescribe age limitations for Reserve officers of different grades and decide whether officers who did not meet those standards would "be retained in, or transferred to, an active or inactive status." 10 U.S.C. § 1003(2) (1982).

■ The age in grade requirements here challenged constitute a reasonable and proper implementation by the Secretary of the Navy of his statutory authority and responsibility. As the district court correctly pointed out, the transfer of 58-year-old Reserve officers

to inactive status is necessary to assure the integrity of its reserve during times of national emergency. Although the Secretary may call any reservist to active duty for 24 months during a military emergency, 10 U.S.C. § 673 (1976), each reservist has an unqualified right to retire at age 60. 10 U.S.C., §§ 676, 1331 (1976). The regulation thus ensures that any reservist so activated will not evade completion of an emergency call-up by premature retirement . . . this portion of the regulation is justified by military necessity.

The appellants do not deny that this was a proper basis for the Secretary to act upon in setting age-in-grade limits. They argue, however, that the Secretary could have accomplished this objective in other ways that would have had a less severe impact upon 58-year-old officers. They suggest that the Secretary could have required 58-year-old reservists to agree, as a condition for continuing in the Ready Reserve, that if called to active duty they would remain in that status as long as the Navy required their services, even past age 60.

It is not for a court to speculate whether the Secretary would have been better advised to have selected some other method for achieving his valid purpose or to second guess his judgment and decision. As the

district court correctly pointed out, the federal courts "have a very limited role in reviewing military personnel decisions, *Orloff v. Willoughby*, 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953); *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979)." We cannot say that the Secretary abused his discretion or otherwise acted improperly in providing for transfer to the Standby Reserve of those Naval Reserve officers in the grades of Commander and Captain who had passed their 58th birthdays.

The district court also correctly upheld the age-in-grade requirements for younger officers as an appropriate provision "to create opportunities for promotion within the reserve hierarchy." As the court pointed out, the Supreme Court upheld a comparable system for mandatory retirement of Foreign Service officers at age 60, which had a similar purpose. *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979). Although the appellants seek to distinguish that case on the ground that it involves statutory rather than regulatory requirements, that distinction is immaterial and does not weaken the significance of the decision as sanctioning mandatory release from active service of older employees in order to make way for younger ones. That Congress found such a policy reasonable for the Foreign Service in no way undermines the Secretary's conclusion that the policy also is appropriate for the Reserve.

The reasonableness of the Navy's age-in-grade requirements is further supported by the fact that the ages the Secretary prescribed were the identical ages Congress itself had provided in earlier legislation. Prior to 1952, Congress specified the ages at which the Secretary of the Navy could discharge or retire Reserve officers. 34 U.S.C. § 855g (1946) (did not cover Captains). The Secretary of the Navy did not act unreasonably or arbitrarily in selecting the same retirement ages that Congress itself previously had specified.

As is the case with the 58-year-old officers, under the limited scope of our review of military personnel actions we have no basis for rejecting the age-in-grade requirements the Secretary has provided for younger, more junior naval reservists.

**B.** Our holding in part IIA disposes of the appellants' contention that the application of the age-in-grade requirements violated the policy and directives of the Secretary of Defense prohibiting age discrimination in the Armed Forces. Department of Defense Directive No. 1100.15 (June 3, 1976). As the appellants recognize, these instructions are directed against and prohibit only "arbitrary" age discrimination. Since we have upheld the Navy's age-in-grade requirements as a reasonable implementation by the Secretary of the Navy of his authority under 10 U.S.C. §§ 1003(a) and 280, any age discrimination inherent in those requirements necessarily is not arbitrary.

C. Appellants argue that, because the other services have different involuntary retirement ages for officers of the same level, the Navy's age-in-grade requirements violate the provision in 10 U.S.C. § 280 that "[s]o far as practicable, regulations for all reserve components shall be uniform." The government states that Reserve officers in the Army and the Air Force are not involuntarily transferred to the Standby Reserve until age 60. See 10 U.S.C. §§ 3843, 8843 (1982) (Army and Air Force, respectively).

As the district court correctly pointed out, however, this provision "does not mandate complete uniformity among reserve regulations," but only requires uniformity "[s]o far as practicable." We conclude that in this language Congress did not require absolute uniformity among the services, but gave each service discretion to tailor its own age-in-grade standards to meet its particular requirements and problems.

Although the legislative history of this provision is subject to varying interpretations, on balance it warrants our conclusion. The provision originated in the Armed Forces Reserve Act of 1952, ch. 608, 66 Stat. 481. That Act included a comprehensive revision of the many statutes and provisions that had governed the Reserve components of the Armed Forces. 98 Cong.Rec. 8303 (1952) (statement of Senator Long).

One of the stated purposes of the Act was "to place all the reserve components of the United States Armed Forces on an equal basis." H.R.Rep. No. 1066, 82d Cong., 1st Sess. 1 (1951). In its general discussion of the legislation, the House committee again stated that the bill "places the reserve components of all the Armed Forces on an equal footing" and that "the committee has sought to provide for equality of treatment for all reservists." *Id.* at 24. The committee, however, recognized that

[t]he bill does not achieve complete equality in all respects and has avoided changes merely to achieve similarity unless a good result is achieved thereby. There now exist many differences between the reserve components with respect to promotion, attrition, constructive credit, precedence, hospitalization, death and disability benefits, and other benefits. The committee is unhappy that the bill does not go all the way toward providing equality of treatment in all of these areas, and was prepared to write such equalizing provisions into the proposed legislation. However, the committee became convinced that the drafting of such provisions on a uniform basis will require a great deal of study and much time.

*Id.*

In its section-by-section analysis of the bill, the committee stated that section 232 (the predecessor to section 1003)

provides that any Reserve officer whose age exceeds that prescribed for his grade and classification may be transferred to a status for which he is qualified. It is to be noted that the bill does not fix any maximum age for membership in the reserve components or for any grade, but the committee has required the Department of Defense to consider the subject of maximum ages in its study of promotion since maximum age in grade is an integral part of a promotion system by being a means of attrition.

*Id.* at 42. The latter reference was to a provision in the bill requiring that

the Secretary of Defense submit two bills to the Congress by February 1, 1952. One such bill is to contain a uniform system of promotion for reservists, including provisions for precedence, forced attrition, distribution in grades, and constructive credit. The second bill is to provide for the equalization of benefits among all reservists and between reservists and regulars.

*Id.* at 24–25.

The Senate committee report on the bill stated that the provision governing age limitations (section 226 in the Senate bill) "provides that any Reserve officer whose age exceeds that prescribed for his grade and classification may be separated, or transferred to a status for which he is qualified. The bill does not fix any maximum age for membership in the reserve components or for any grade." S.Rep. No. 1795, 82d Cong., 2d Sess. 24, *reprinted in* 1952 U.S.Code Cong. & Ad.News 2005, 2030. The report then summarized the various statutory provisions governing the retirement ages in the different Reserve components, including the authority of the Secretary of the Navy to discharge or place on the honorary retired list Naval Reserve officers who had reached specified ages. *See* 34 U.S.C. § 855g (1946). The committee described section 246 of the Senate bill (which became codified as section 280) as follows:

This section vests each Secretary with power to make and publish regulations for the reserve components under his jurisdiction. The regulations of the military departments would be subject to standards, policies, and procedures which the Secretary of Defense may prescribe and would be uniform insofar as practicable for all the reserve components.

S.Rep. No. 1795, *supra*, at 34–35, 1952 U.S. Code Cong. & Ad.News at 2041. The conference committee report does not deal with this issue. H.R.Rep. No. 2445, 82d Cong., 2d Sess. (1952), U.S.Code Cong. & Admin.News 1952, 2005.

This legislative history indicates that Congress wished to provide equality of treatment among the different Reserve components with respect to a wide variety of subjects, but that it also recognized that the bill it enacted could not and did not provide complete uniformity. Necessarily,

the Act gave the respective service Secretaries substantial discretion to determine the extent to which the needs and situations of the particular service justified departure from the general standard of uniformity that Congress desired for the various Reserve components. The requirement in section 280 that regulations for all Reserve components should be uniform "[s]o far as practicable" is a general provision dealing with all aspects of Reserve affairs. It is not specifically directed to the particular problem of age-in-grade limitations that section 1003 addresses.

We do not believe that in section 280 Congress intended to preclude the Secretary of the Navy from continuing by regulation the same age-in-grade limits that Congress previously had prescribed by statute. Reading sections 280 and 1003 together, we think they authorize but do not require the Secretary of the Navy to change the previous age-in-grade limits. Similarly, we do not think that section 280 requires the Secretary, as a condition to continuing the prior age limitations, affirmatively to demonstrate that it would not be practicable for the Navy to follow the same age-in-grade standards as the other services.

We cannot say that the Secretary of the Navy acted arbitrarily or capriciously or in violation of section 280 in adopting for the Naval Reserve age-in-grade limits different from those of the other services. The personnel problems that confront the different services are different. The differences relate to manpower needs, ability to recruit and retain personnel, authorized personnel limits, fiscal situations, and the differing nature of the military duties of the services. These differences necessarily influence the different services' needs for Reserve as well as Regular officers.

In the circumstances, the district court was warranted in upholding the Navy age-in-grade standards against the appellants' uniformity challenge without considering the details of the variations between the Navy's standards and those of the other services. There was, therefore, no need for the court to have before it the standards of the other services when it decided this case.

The order of the district court granting the appellees' motion for summary judgment is affirmed.

AFFIRMED.