**ATARI, INC., Plaintiff-Appellee,**

v.

**JS & A GROUP, INC., Defendant-Appellant.**

**Appeal No. 84–742.**

United States Court of Appeals, Federal Circuit.

Nov. 8, 1984.

Friedman, and Davis, Circuit Judges, filed opinions concurring in the result.

See also, Fed.Cir., 732 F.2d 138.

George H. Gerstman, Chicago, Ill., for appellant.

David E. Springer, Chicago, Ill., for appellee; Daniel W. Vittum, Jr. and Wendi Sloane Weitman, Chicago, Ill., of counsel.

Charles A. Laff, Chicago; Ill., for intervenor; Larry L. Saret and Harry C. White, Jr., Chicago, Ill., of counsel.

Karen G. Bender, Washington, D.C., for amicus curiae, Bar Association of D.C.

David W. Plant, New York City, for amicus curiae, The Committee on Patents of the Association of the Bar of the City of New York.

Jacob N. Erlich, Waltham, Mass., for amicus curiae, Boston Patent Law Association.

Jack Q. Lever, Jr., Washington, D.C., Charles L. Gholz, Arlington, Va., Frank P.

**1424**

Cihlar, Washington, D.C., and Roger W. Parkhurst, of Alexandria, Va., for amicus curiae, American Intellectual Property Law Association.

Alfred N. Goodman, Steven C. Lambert, Washington, D.C., Maurice Klitzman, Manassas, Va. and James B. Lynn, Washington, D.C., for amicus curiae, Bar Association, District of Columbia.

James H. Laughlin, Jr., Arlington, Va., for amicus curiae, Virginia State Bar PTC SEC.

Ronald J. Palenski, Arlington, Va., for amicus curiae Data Processing (Merits).

Marie V. Driscoll, New York City, for amicus curiae U.S. Trademark Association.

Don W. Martens, Newport Beach, Cal., for amicus curiae Orange County Patent Law Association.

Stephen Y. Chow, Boston, Mass., for amicus curiae Boston Bar Association.

John S. Kingdon, Washington, D.C., for amicus curiae AD HOC Committee on Antitrust Lawyers.

Dorothy Schrader, Washington, D.C., for amicus curiae Comments of Copyright.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, DAVIS, BALDWIN, KASHIWA, BENNETT, MILLER, SMITH, NIES, and NEWMAN, Circuit Judges.

## ORDER

MARKEY, Chief Judge.

Atari, Inc. (Atari) moved to transfer this appeal to the United States Court of Appeals for the Seventh Circuit, asserting lack of jurisdiction in this court. The motion will be denied.

### Background

On November 18, 1983, Atari, Inc. (Atari) filed a complaint in the United States District Court for the Northern District of Illinois against JS & A Group, Inc. (JS & A), alleging contributory copyright infringement (Count I), patent infringement (Count II), and five non-patent claims. The latter included one federal claim, for unfair competition (unfair use of Atari's trademarks in advertising) under 15 U.S.C. § 1125(a) (Count III), and four claims under Illinois law for deceptive trade practices (Count IV), fraud (Count V), state unfair competition (Count VI), and misappropriation (Count VII).

Atari thus filed a single case involving one patent and six non-patent counts, all based on the same limited bundle of integrated facts and arising out of the same transaction, i.e., JS & A's advertising and sale of its Prom Blaster product and blank cartridges.

The district court's jurisdiction of *all* federal claims (Counts I, II, III) was based on § 1338. Its jurisdiction of counts IV—VII was pendent. The case was and is designated "Civil Action No. 83 C 8333" in the district court. The complaint stated that it "joins claims for unfair competition with substantial and related claims under the patent and trademark laws." Atari incorporated by reference the allegations of Count I in Count II.

On December 8, 1983, the district court preliminarily enjoined JS & A against contributory copyright infringement. The injunction restrained JS & A from selling its blank 8K cartridge, the sole subject of the patent infringement count, for use with the Prom Blaster. Thus Atari effectively obtained an injunction against at least some acts of patent infringement. The record does not reveal whether there is any potential for sale of 8K cartridges that would not contribute to copyright infringement.

The foregoing facts illustrate the obvious one-ness of the case, but do not control our conclusion respecting the jurisdiction granted in § 1295(a)(1), Federal Courts Improvement Act of 1982, P.L. 97–164, 96 Stat. 25 (1982) (hereinafter "FCIA").

On December 19, 1983, after obtaining the injunction, Atari moved under Fed.R. Civ.P. 13(i) and 42(b) for an order separating patent count II "for trial and judgment" (though Atari speaks of Count I as "separated", that Count was neither separated nor mentioned by the district court).

The *sole* basis and *purpose* stated for Atari's motion was its counsel's desire that an anticipated appeal by JS & A from the injunction order be directed to the Seventh Circuit.

Atari's motion to separate was filed, heard, and decided while JS & A's counsel was out of the country. A Mr. Von Mandel, who "stood in" for JS & A, told the court he knew nothing of the case (which may account for the court's volunteered grant of time for a motion to vacate). At the short hearing devoted to the motion (3 transcript pages), Mr. Von Mandel said nothing on its merits. Atari's counsel stated, though disingenuously, the purpose of Atari's motion in this colloquy:

MR. SPRINGER: The reason for the motion, your Honor, is there have been some changes in appellate jurisdiction regarding patent cases over the last couple of years.

\* \* \* \* \* \*

The legislative history of the Act setting up the Federal Circuit says basically Federal District Judges should use their authority under the Federal Rules to separate out the patent claims from the non-patent claims to make sure that the patent claims go to the Court of Appeals for the Federal Circuit and the other claims go to the Court of Appeals on a regional basis.

We have some reason to believe that defendant has in mind appealing this court's preliminary injunction order to the Court of Appeals for the Federal Circuit.

One of the purposes—or the basic purpose of our motion is to make certain that there is no question but that your Honor's order granting the preliminary injunction related only to the copyright issues.

THE COURT: There is no question about that, none whatever.

MR. VON MANDEL: Your Honor, if I may, Mr. Gilhooly of Mr. Gerstman's office called Mr. Springer, I'm told, and they agreed to put it over until next Wednesday when Mr. Gerstman will be back in town and handle this.

MR. SPRINGER: Here is what happened on that score. He did call me and I said, "I don't have any problem putting it over, but I want to get a letter from you saying you're not going to file any Notice of Appeal while my motion is pending because it's important that this motion be presented to the Court and ruled on before the defendants attempt to take an appeal."

What we're saying today in this motion will be a part of the record if they do attempt to take an appeal to the Federal Circuit.

THE COURT: I'm going to grant the motion with leave to vacate it in ten days so that you can come in and convince me it's wrong. But there is no question—I mean, when you were discussing this matter, I thought that ought to be academic because I made that ruling that referred [sic] to any patent claims. It was copyright exclusively.

So I'll—what you want to do is separate the—tell me precisely what you want done.

\* \* \* \* \* \*

MR. SPRINGER: What we're asking is that the *patent claim* relating to these 8–K cartridges *be separated* out for a separate trial, if necessary, and for a separate judgment *so an appeal* from whatever judgment is entered *there would lie properly with the Court of Appeals for the Federal Circuit* rather than to the Court of Appeals for the Seventh Circuit. [Emphasis added].

THE COURT: Well, just to preserve the status quo is what it amounts to.

I'll grant that motion today, but you can come in and ask me to change my mind on Wednesday or any other time you want to.

The record contains no findings (on relationship of counts or otherwise) and no reference to a statute or Rule. Nor does the record reveal whether the district court thought it had no choice in light of moving counsel's statements, or whether it realized

it was being asked to assure the inevitable. Atari cites no basis for telling the district court that separation was required to guarantee what the law indisputably mandates, i.e., that an appeal from a judgment on the patent count would lie to this court.

Though the separation order is not before us, we note in this background statement that at no time did Atari mention the criteria for application of Rule 13(i) or Rule 42(b). No reference is made to the "judgment on a counterclaim or cross-claim" to which Rule 13(i) is directed, or to the *purposes* of Rule 42(b): "in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy". Atari has never indicated where in either Rule there appears an authorization to separate counts for the *sole purpose* of routing appeals.

Atari's written motion announced this court's existence, partially quoted the legislative history on forum shopping, said the purpose was to direct appeals, and partially quoted the legislative history statement that district judges were "encouraged to use their authority" to "ensure the integrity of the jurisdiction of the Federal Circuit Court of Appeals..." Atari's *ellipsis* was used in place of the succeeding words in the history: "by separating final decisions on claims involving substantial antitrust issues from trivial patent claims, counterclaims, cross-claims, or third party claims raised to manipulate appellate jurisdiction".

On December 21, 1983, the district court issued this order:

> Plaintiff granted leave to separate Count II of the Verified Complaint. Defendant may file motion to vacate order in two weeks.

Atari says the order separated Count II for trial and judgment. That was its request, but the order contains no such indication. That no reference appears in the order to

"trial and judgment", or to any appeal, however, is unrelated to our disposition of the present transfer motion.

Thus the order for separation (not "severance" as Atari calls it before us)[1] said nothing about its rationale or about its effect, if any, on pretrial matters such as discovery, or on issues that might be raised by defendant. Nor was anything said about trial of the copyright claim. Though JS & A conceded absence of a fact issue, the grant of only a preliminary injunction implied an expectation of need for trial on that claim. Nor did the court say anything about Counts III–VII or about its own or the parties' convenience.

JS & A filed answer on January 27, 1984. The answer included seven affirmative defenses, two (attempt to monopolize; unclean hands) apparently relating to all counts, and a jury demand.

All counts thus appear to have remained joined in the district court for all pretrial matters and, apparently, for all issues raised in the answer. The district court nowhere indicated that it was creating, nor was it asked to create, two distinct cases before it. The case therefore was and remains one case before the district court. The record is silent on whether the separation order would require impanelling two or more juries or repetitive testimony in separate trials on numerous claims based on the same conduct of JS & A.

Though the parties argue the propriety of the separation order, that question, as above indicated, is not before us. JS & A did not move to vacate the separation order, and has not sought mandamus or other review of that order. The only question here, as discussed *infra*, is the effect of the order, if any, on this court's jurisdiction.

---

**1.** Severance is obtained under Rule 21; separation for trial is obtained under Rule 42(b). It is inaccurate and misleading to speak of "severance" and "separation" interchangeably. 3A J. MOORE'S FEDERAL PRACTICE ¶ 21.05[2] (2d ed. 1982). The legislative history is confusing in this respect in that it refers nowhere to Rule 21, but only to Rules 13(i), 16, 20(b), 42(b), and 54(b), all of which relate to "separation", not "severance", and yet speaks of "severing" a patent claim. S.Rep. No. 275, 97th Cong., 1st Sess. (1981) at 20, *reprinted in* 1982 U.S.Code Cong. & Ad.News 11, at 30.

Trials establish facts. If trial is held in this case, the district court may elect to vacate its separation order and try the case as a whole. In all events, and in whatever sequence individual counts may have been tried, judgments may be and normally are held and entered as parts of one final judgment, as indicated in section (2) below.

On January 4, 1984, JS & A filed a notice of appeal of the preliminary injunction order to this court. On January 19, 1984, Atari filed this motion to transfer the appeal to the Seventh Circuit, alleging lack of jurisdiction in this court.

Atari lectures us on our need to exercise "modesty" in assessing our jurisdiction. Modesty, however, is in the eye of the advocate. Atari is apparently unaware of this court's decisions in: *Beghin-Say International, Inc. v. Ole-Bendt Rasmussen,* 733 F.2d 1568, 221 USPQ 1121 (Fed.Cir. 1984); *In re Precision Screen Machines Inc.,* 729 F.2d 1428 (Fed.Cir.1984); *Henderson v. Office of Personnel Management,* 724 F.2d 119 (Fed.Cir.1983); *Hilliard v. United States Postal Service,* 722 F.2d 1555 (Fed.Cir.1983); *C.P.C. v. Nosco Plastics, Inc.,* 719 F.2d 400 (Fed.Cir.1983); *Williams v. Office of Personnel Management,* 718 F.2d 1553 (Fed.Cir.1983); *Lindahl v. Office of Personnel Management,* 718 F.2d 391 (Fed.Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 3533, 82 L.Ed.2d 838 (1984); *Harrington Mfg. Co. v. Powell Mfg. Co.,* 709 F.2d 710 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1601, 80 L.Ed.2d 131 (1984); *In re Makari,* 708 F.2d 709, 218 USPQ 193 (Fed.Cir.1983); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 217 USPQ 985 (Fed.Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983); *United States v. John C. Grimberg,* 702 F.2d 1362 (Fed.Cir.1983), in each of which this court determined that it did not have jurisdiction.

Atari also suggests that this court employ "for the first time" the transfer provision, 28 U.S.C. § 1631, apparently unaware of this court's employment of § 1631 in *Daniels v. United States Postal Service,* 726 F.2d 723 (Fed.Cir.1984); *Hilliard v. United States Postal Service,* 722 F.2d 1555 (Fed.Cir.1983); *United States v. John C. Grimberg Co.,* 702 F.2d 1362 (Fed.Cir. 1983); *accord W.M. Schlosser Co. v. United States,* 705 F.2d 1336 (Fed.Cir.1983); *F. Alderete General Contractors, Inc. v. United States,* 715 F.2d 1476 (Fed.Cir. 1983).

Noting its importance, this court elected, *sua sponte,* to consider the transfer motion *in banc,* and, on April 12, 1984, invited submission of supplemental briefs from the parties and briefs *amicus curiae* from interested persons and organizations.[2]

### Issue

Atari's motion to transfer raises a single issue: whether this court has jurisdiction over an appeal from an order preliminarily enjoining contributory copyright infringement when: (1) the jurisdiction of the district court over the action was based in part on 28 U.S.C. § 1338; (2) the pleadings allege a non-frivolous, continuing claim for patent infringement; and (3) the district court has ordered separation of the patent claim.

### Introduction

Our decision on the narrow issue of whether our jurisdiction to hear appeals in this case has been ousted by the separation

---

**2.** Briefs were filed by *amici:* United States Trademark Association; the Bar Association of the District of Columbia; the Ad Hoc Committee of Antitrust Lawyers; the Committee on Law and Technology of the Boston Bar Association; the Copyright Office; American Intellectual Property Law Association; the Committee on Patents of the Association of the Bar of the City of New York; the Virginia State Bar, Patent, Trademark and Copyright Section; the Orange County Patent Law Association; and the Boston

Patent Law Association. The briefs divide evenly respecting the result, and, while helpful, most appear devoted more to the interests represented than to the efficient operation of the courts. They indicate that it is possible to argue opposite positions by selective quotation from legislative history. Some *amici* advocate policies that would result in movement toward two of the horrors predicted by opponents of the FCIA during its consideration by Congress (namely, a "specialized" court; risk of "capture").

order is dispositive of the motion to transfer.

Though pressed to do so by some *amici*, we need not and therefore do not explore or decide questions of this court's jurisdiction under circumstances not before us, e.g., when: a patent claim has been withdrawn with prejudice, because of settlement or otherwise, before a notice of appeal is filed; a patent claim has been dismissed as frivolous and the dismissal is not appealed; a patent infringement counterclaim was pleaded in response to a complaint containing only non-patent claims; patent and non-patent claims arising out of one nucleus of operative facts have been filed by one plaintiff as separate cases that have not been consolidated; a complaint has been amended to give the district court jurisdiction in part on § 1338 that it did not have over the original complaint; or similar circumstances that are here hypothetical.

Nor do we discuss the difference in "relatedness" to a patent claim of a "true" antitrust claim under the Sherman or Clayton Act and a "patent version" of antitrust claim (*see Walker Process Equipment, Inc. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247, 147 USPQ 404 (1965)). The "related"-"unrelated" dichotomy, if it requires resolution, must await case-by-case delineation initially by district courts. It may be here noted that nothing in this court's jurisdictional statute, § 1295(a)(1), requires that a non-patent claim be "related" to a patent claim in a case within this court's appellate jurisdiction.

## ANALYSIS

The present motion enables the court, with the appreciated cooperation of ten *amici*, to respond in part to Congress' expectation that it would formulate appropriate standards for determining jurisdiction in cases involving patent and non-patent claims "in accordance with the objectives of the Act". S.Rep. No. 275, 97th Cong., 1st Sess. (1981) (Senate Report) at 20, *reprinted in* 1982 U.S.Code Cong. & Ad.News at 30.[3] The House Report foresaw the specific question raised here:

> Should questions legitimately arise respecting ancillary and pendent claims and for the direction of appeals in particular cases, the Committee expects the courts to establish, as they have in similar situations, jurisdictional guidelines respecting such cases. Whatever form such guidelines for particular cases may take, the proposal would continue to provide a consistent jurisprudence and a uniform body of patent law created over time by the Court of Appeals for the Federal Circuit or by its reviewing court, the Supreme Court of the United States.

H.R.Rep. No. 312, 97th Cong. 1st Sess. (1981) (House Report) at 41.

This court has dealt with aspects of the present dispute. In *Albert v. Kevex Corp.*, 729 F.2d 757, 221 USPQ 202 (Fed.Cir.1984), plaintiff brought two patent infringement counts, a state law count, and a federal antitrust count. This court heard the appeal from a summary judgment involving no patent infringement count, neither patent count having been adjudicated. 729 F.2d at 759, 221 USPQ at 204. In *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 219 USPQ 197 (Fed.Cir.1983), this court held that the district court's jurisdiction over a declaratory judgment action for patent invalidity was under § 1338, and that this court had jurisdiction to determine whether the district court had correctly so determined, mentioning that an invalidity claim in defense of a state court action for royalties did not "arise under federal law". In *Chemical Engineering Corp. v. Marlo, Inc.*, 222 USPQ 738 (Fed.Cir.1984), this court published an order in which it upheld its jurisdiction in a diversity case because the district court's jurisdiction was also based on a patent claim under § 1338. In *In re Snap-On Tools Corp.*, 720 F.2d 654, 655, 220 USPQ 8, 9 (Fed.Cir.1983), *Missis-*

**3.** After a reasonable period, during which this and other courts will have developed standards and a track record of experience with them, congressional review of applicable statutes may be appropriate in light of that experience.

*sippi Chemical Corp. v. Swift Agr. Chemicals,* 717 F.2d 1374, 1379, 219 USPQ 577, 582 (Fed.Cir.1983), and *Baker Perkins, Inc. v. Werner & Pfleiderer Corp.,* 710 F.2d 1561, 1565, 218 USPQ 577, 579 (Fed.Cir. 1983), this court dealt with a related question, i.e., mandamus when district court jurisdiction was based on § 1338.

That this court upholds its jurisdiction here does not preclude a contrary holding in future, different cases. Nor does it preclude transfer under 28 U.S.C. § 1631 of an appeal so devoid of patent issues, present or potential, as to suggest transfer. Federal courts have declined jurisdiction over pendent and ancillary claims in the interests of "judicial economy, convenience, and fairness to litigants". *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

■ Achievement of increased uniformity in the substantive law of patents does not require that this court get its hands on every appeal involving an allegation that a patent law issue is somehow involved. As this court has said, our jurisdiction of appeals from district courts depends on that of the district court, and a mere allegation that patent law is involved will not give this court jurisdiction when that of the district court did not rest at least in part on a continuing claim arising under the patent or plant variety protection laws. 28 U.S.C. § 1338. *See Beghin-Say International, Inc. v. Ole-Bendt Rasmussen,* 733 F.2d 1568, 1570–71, 221 USPQ 1121, 1123–24.

### (1) The Statutes

Section 1295(a)(1) of title 28 vests this court with jurisdiction over any appeal from a final decision of a district court *if the jurisdiction of that court was based, in whole or in part, on Section 1338 of this title,* except in a case involving a claim arising under any Act of Congress relating to copyrights or trademarks and *no other claims* under Section 1338(a) shall be governed by Sec-

tions 1291, 1292 and 1294 of this title [Emphasis added].

Section 1338(a) of Title 28 vests the district court with jurisdiction over actions arising under Acts of Congress dealing with Atari's Counts I, II, and III:

The district courts shall have original jurisdiction of any *civil action arising under* any Act of Congress relating to *patents,* plant variety protection, *copyrights* and *trade-marks.* Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases. [Emphasis added].[4]

The controlling fact here is that the district court's jurisdiction of the case was and still is based in part on § 1338.

■ When it filed its case in the district court, Atari not only cited § 1338 as a basis for jurisdiction, but invoked subject matter jurisdiction under § 1338(a) when it included Count I alleging copyright infringement and Count II alleging patent infringement. A claim arises under the particular statute which creates the cause of action, *American Well Works Co. v. Layne And Bowler Co.,* 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916).

Congress recognized that non-patent claims might accompany a patent claim in a single complaint. It could have provided appellate jurisdiction in this court only over judgments entered on the patent claim. It did not. It designed and enacted a statute that provided jurisdiction in this court over appeals from decisions in "cases" in which the district court's jurisdiction "was based, in whole or in part, on Section 1338." [Emphasis added].

Thus our jurisdiction here is mandated by the plain language of the statute, the best indication of the scope of a court's jurisdiction. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). This court's jurisdiction, under the statute and as recognized in the

---

**4.** Not every dispute involving a patent "arises under" the patent laws within the meaning of § 1338. For a discussion of "arising under" jurisdiction, see 1 J. MOORE'S FEDERAL PRACTICE, § 0.62[2] (2d ed. 1982).

legislative history, *infra* note 7, is *defined* by the basis of the district court jurisdiction. Because the district court's jurisdiction of Atari's entire case was and still is based in part on its patent claim under § 1338(a), and because § 1295(a)(1) vests this court with exclusive appellate jurisdiction in such cases, we cannot, as Atari would have us do, disregard the literal language of our jurisdictional statute. 28 U.S.C. § 1295(a)(1). *Cf. C.R. Bard, Inc. v. Schwartz,* 716 F.2d 874, 877–78 (Fed.Cir. 1983).

It is not disputed that under 28 U.S.C. § 1292(c)(1), this court's jurisdiction over a district court's final decision in a case includes jurisdiction over an interlocutory appeal from a preliminary injunction order of that district court in that case.

### (2) *Effect of the Separation Order*

In arguing that the present separation order did not "deprive" this court of jurisdiction it never had, Atari says this court could have jurisdiction over a non-patent claim, if at all, only when that non-patent claim accompanies an appealed judgment on a patent claim. As indicated below, that effort to so limit this court's jurisdiction, and to enable bifurcation of the appeal in all cases that involve patent and non-patent issues in the district court, is rejected as contrary to congressional intent.

■ Atari's argument also disregards the effect of Rule 42(b) (to *temporarily* separate a claim for trial) and the general rule that a single judgment is normally entered after trial of all counts. 9 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL §§ 2387, 2392 (2d ed. 1982). A judgment on a separately tried claim is normally not final and appealable until all claims are adjudicated. *See Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 434–35, 76 S.Ct. 895, 899–900, 100 L.Ed. 1297 (1956); *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956); *Hebel v. Ebersole,* 543 F.2d 14, 16–17 (7th Cir.1976).

Nothing in Fed.R.Civ.P. 13(i) and 42(b), on which Atari's motion to separate was based, or in any other Rule, permits the conclusion that the district court's jurisdiction—and therefore this court's—was affected in any way whatsoever by the present separation order, even if that order be interpreted as one for separate trial of and judgment on the patent count.

Fed.R.Civ.P. 13(i) is not relevant. It is part of a Rule headed "Counterclaims and Cross Claims", neither present here. It is in effect little more than a cross-reference to Fed.R.Civ.P. 42(b) and 54(b).

Fed.R.Civ.P. 42(b), entitled "Separate Trials," has nothing to do with judgments, or separate cases, or appeals.

■ To give the present separation order the effect suggested by Atari would conflict with established judicial construction of the procedural options available under the Rules. As above indicated, the purpose of ordering separate trials under Rule 42(b) is to promote convenience, expedition, and economy, and to avoid delay and prejudice. Action on the motion is procedural, not substantive, and has *no effect* on jurisdiction. *See Richmond v. Weiner,* 353 F.2d 41, 44–45 (9th Cir.1965), stating:

> In this case, the Court's jurisdiction to determine the merits of the whole case, including the trial-separated non-federal issue as well as the remaining issues within its jurisdiction awaiting disposition, continues undiminished by such severance and separate trial of the copyright ownership issue.

Nor does separation under Rule 42(b) "sever" claims. *See Spencer, White & Prentis, Inc. of Conn. v. Pfizer, Inc.,* 498 F.2d 358, 361–62 (2d Cir.1974). Indeed, a power to sever claims under Rule 42(b) was rejected by its drafters. 5 J. MOORE'S FEDERAL PRACTICE ¶ 42.03[1] (2d ed. 1982).

■ The procedure and arrangements adopted by a district court for managing a trial and entering judgments are clearly within that court's discretion when exercised under the Rules. The question here, however, is whether, under the circum-

stances of this case, a district court may employ a procedural rule for the *sole purpose* of ousting this court from the jurisdiction it was granted under § 1295(a)(1). That question must be answered in the negative.

Atari's insistence that the separation order created two "cases" for appeal, each with "specialized" and different *legal* "issues," fails to recognize that when the procedural options for separate trials and separate judgments are exercised multiple cases are *not* by those procedural steps alone created.

Atari's suggestion that denial of its transfer motion will cause plaintiffs to disregard Rule 18, Fed.R.Civ.P., is without merit. If a plaintiff filed separate complaints on numerous claims arising out of the same acts of defendant, the district court would presumably consolidate the actions under Rule 42(a).

There remains but one case, notwithstanding the separation. There may, and normally will, be one final judgment on all counts. All that may have changed here (if the separation order survives)[5] is the timing and sequence in which claims and issues are tried, and, perhaps, when individual judgments are arrived at before their incorporation in a final judgment.

■ All appellate jurisdiction is prospective, in the sense that an appeal may or may not be filed. That jurisdictional potential is not, however, to be ignored. *See* 28 U.S.C. § 1651(a) (the "All Writs Act"). This court's potential subject matter jurisdiction to hear any appeal in this case arose under the statute when Atari filed its complaint seeking an exercise of the district court's jurisdiction on its patent claim under § 1338. That potential jurisdictional fact has not changed in this case. The effect of the present separation order on our jurisdiction is nil.

(3) *Determination of This Court's Potential Jurisdiction in This Case*

It is suggested that appellate jurisdiction in this circuit should always be determined only after notice of appeal is filed. This is true in the sense of time, for until a notice is filed there is no reason or occasion for making that determination. It is not true in respect of the *criteria* to be looked to in making that determination.

Atari says the "case on appeal" is one "relating to copyrights ... and no other claims under § 1338(a)." Atari's difficulty here is at least threefold: (1) that is not what the statute says; (2) leaving the identity of the appellate forum in doubt until trial's end is poor policy; and (3) Atari's approach flies in the face of Congress' intents (discussed below) to avoid (a) bifurcation of appeals and (b) specialization of this court.

■ Whatever may be said of the appellate jurisdiction of other circuits (and of this circuit in relation to tribunals and decisions over which it exercises exclusive appellate jurisdiction), this court's jurisdiction to hear appeals from district court judgments is unique and depends, by statutory direction, on whether the district court's jurisdiction "was based, in whole or in part, on [a patent claim under] Section 1338". That is the statutorily mandated *criterion* for determining our jurisdiction over JS & A's appeal from the district court's grant of an injunction in this case.

■ As pointed out in *Albert v. Kevex Corp.*, 729 F.2d at 765, 221 USPQ at 209, the normal rule is that "federal jurisdiction is measured at the outset of the suit." (Davis, J., dissenting from the majority's view that existence of interfering patents must be shown before jurisdiction exists to determine priority in an "interfering patents" suit under 35 U.S.C. § 291). The reference there was to district court jurisdiction, yet it is that jurisdiction that defines our own. The criteria for jurisdiction

---

**5.** In *General Telephone & Elec. Lab, Inc. v. National Video Corp.*, 297 F.Supp. 981, 983, 160 USPQ 701, 702–3 (N.D.Ill.1968), the court refused separation for trial of antitrust and patent claims because the facts, the proofs, and the claims were so closely related.

of the district court over a case are determined at the complaint stage, and a subsequent event such as the present separation order entered solely to direct appeals, *that does not alter those criteria*, cannot oust the appellate court of its potential jurisdiction over appeals from final decisions in that case. *See Saint Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938).

This court is not at liberty to act as though Congress had said what it did *not* say, i.e., that "jurisdiction of the Court of Appeals for the Federal Circuit shall always be determined when the notice of appeal is filed and without regard to the basis of the district court's jurisdiction," or "jurisdiction of the Court of Appeals for the Federal Circuit shall be limited to appeals of final decisions on patent *issues*."

In providing for the anticipation of appellate jurisdiction at the early stage of an action, Congress wrote well. To impart certainty throughout the entire process of filing, pretrial, trial, and post-trial motions, appellate jurisdiction should normally be known and remain unaffected. As above indicated, we do not here deal with a situation in which a patent claim has been entirely expunged or irrevocably discontinued, nor with a severance based on the existence of two distinct cases. We deal only with the suggestion that parties or district courts should be able to use a mere procedural separation order like that before us for the sole purpose of routing and re-routing prospective appellate jurisdiction over various counts. If that suggestion were followed, the continuing uncertainty could result in unnecessary disputes, undue costs, and additional mid-process litigation concerning the proper appellate forum for individual claims, for interlocutory appeals, and for writs of mandamus.

A major reason for creating this court was to eliminate such sideline skirmishing. Permitting this court's jurisdiction over individual counts to be manipulated through the expedient of mid-stream tactical procedural motions filed solely for the purpose of manipulation would be the antithesis of that fundamental objective of Congress.

It would also be absurd. It may be one thing for a district court to create two distinct cases under certain proper circumstances. We express no view on that scenario. It is quite another, however, for counsel to enlist the district court's aid in "separating" a claim without regard to facts and circumstances and solely for the purpose of directing an appeal to the circuit desired by counsel. As above indicated, nothing in any Rule authorizes that kind of blatant manipulation of appellate court jurisdiction.

An *amicus* says our jurisdiction should always be determined only when the notice of appeal is filed "to insure national uniformity in patent law" by directing *every* appeal involving any patent issue to this court. Not only is that not what the statute says, but Congress was not concerned that an occasional patent law decision of a regional circuit court, or of a state court, would defeat its goal of increased uniformity in the national law of patents. *See* Adams, *The Court of Appeals for the Federal Circuit: More Than a National Patent Court*, 49 Mo.L.Rev. 43, 49 (1984).

If the district court's jurisdiction were based not even in part on § 1338, this court would have no potential jurisdiction. *See Beghin-Say International, Inc., supra,* 733 F.2d at 1570–71, 221 USPQ at 1123–24. Whatever be the allegations in the complaint, however, the nature of the action may indicate that the district court's jurisdiction was and continued to be actually based in part on the patent laws under § 1338. *See In re Snap-On Tools Corp.,* 720 F.2d 654, 220 USPQ 8; *Chemical Engineering Corp. v. Marlo, Inc.* 222 USPQ 738. This court's potential subject matter jurisdiction over any appeal in the present case continues to be determined by the complaint filed by Atari under which the

jurisdiction of the district court was and is based in part on § 1338.[6]

### (4) *Legislative History*

Though the statutes are clear and unambiguous, reference to legislative history confirms that Congress intended to vest jurisdiction over the present appeal in this court.

Committee Reports have been described as among the most persuasive indications of Congressional intent. *Housing Authority of the City of Omaha, Nebraska v. United States Housing Authority*, 468 F.2d 1, 6 n. 7 (8th Cir.1972). *See also C.E. Hooper, Inc. v. United States*, 539 F.2d 1276, 1288 (Ct.Cl.1976). Here, the congressional reports reveal Congress' clear intent to define this court's jurisdiction in relation to that of the district court, and to assign to this court appellate jurisdiction over all final, i.e., appealable, decisions of district courts in cases like the present, where the district court's jurisdiction was and is based in part on a continuing non-frivolous patent claim under § 1338, whether the appealed decision relates to an existing patent claim or to a non-patent claim.[7] Atari and *amici* supporting its motion have shown nothing to the contrary, in either the statute or the legislative history.

In creating this court's jurisdiction, Congress had presented to it two choices: (a)

granting this court appellate jurisdiction over only the patent issues in a case ("issue" jurisdiction); or (b) granting this court appellate jurisdiction over the entire case ("arising under" jurisdiction).[8] Congress specifically and unequivocally rejected the former and chose the latter.

Atari quotes legislative history language out of context. Examination of the pertinent legislative history in its entirety establishes that adoption of Atari's analysis in this case would stand congressional intent on its head. That legislative history states clearly and unequivocally that "Subsection (a)(1) of new section 1295 of title 28 gives the Court of Appeals for the Federal Circuit jurisdiction of *any* appeal in which district court jurisdiction was based, in whole or in part, on section 1338 of title 28 ...." [Emphasis added]. Senate Report at 20, U.S.Code Cong. & Admin.News 1982, at 30. (The ellipsis in the foregoing quote replaces a description of the exception for § 1338 cases involving no patent or plant variety claims).

The legislative history acknowledges concern expressed to Congress by opponents of the FCIA, i.e., that a plaintiff might attempt to *manipulate* jurisdiction by adding a *frivolous* patent count, thus seeking to escape a regional circuit's holding in a

---

**6.** Mr. Frank Cihlar, one of the drafters of the FCIA, stated to the Judicial Conference of this court in May, 1982:

> We did our best ... to try to provide in new 28 U.S.C. § 1295 a "bright line" that would establish *at the outset of the case* whether any appeal would lie to the CAFC or to the regional circuit, much as 28 U.S.C. § 1294 now provides a way to sort out venue among the existing circuits. [Emphasis added].

94 F.R.D. 350, 400 (Ninth Annual Judicial Conference of the United States Court of Customs and Patent Appeals, May 25, 1982).

**7.** As stated in the House Report at 23–24:

> "The new court's appellate jurisdiction in patent cases is defined in relation to the district court's jurisdiction; that is, if the district court has jurisdiction over the case under 28 U.S.C. § 1338(a), on the ground that the case arises under the patent law, the appeal in that cases [sic] will go to the new appellate court, instead of the regional circuit."

And, again, at 41:

"The statutory language in question specifically requires that the district court have jurisdiction under 28 U.S.C. § 1338. This, standing alone, is a substantial requirement. Immaterial, inferential, and frivolous allegations of patent questions will not create jurisdiction in the lower court, and therefore will not create jurisdiction in the appellate court."

**8.** Assistant Attorney General Meador, generally credited with the conception that led to the creation of this court, testified before Congress:

> The options are to have the entire case go to the new court, or to have the whole case go to the regional circuits where it would now go, or to split the case and let one part of it go to the court of appeals for the Federal circuit and the other part go to the regional circuit. It seemed to us it was sounder to bring the whole case before a single court.

*Hearings on S. 677 and S. 678 before The Subcomm. on Improvements in Judicial Machinery of the Senate Judiciary Comm.*, 96th Cong., 1st Sess. 41 (1979).

non-patent field of law. After noting that "immaterial, inferential, and frivolous allegations of patent questions will not create jurisdiction in the lower court" and therefore not in this court,[9] the Senate Report notes at 20, U.S.Code Cong. & Admin.News 1982, at 30:

> Federal District judges are encouraged to use their authority under the Federal Rules of Civil Procedure, *see* Rules 13(i), 16, 20(b), 42(b), 54(b), to ensure the integrity of the jurisdiction of the federal court of appeals by separating final decisions on claims involving substantial antitrust issues from *trivial* patent claims, counterclaims, or third party claims *raised to manipulate appellate jurisdiction.*
>
> The Committee intends for the jurisdictional language to be construed in accordance with the objectives of the Act and these concerns. If, for example, a patent-claim is *manipulatively joined* to an antitrust action but severed or dismissed before final decision of the antitrust claim, jurisdiction over the appeal of the antitrust claim should not be changed by this Act but should rest with the regional court of appeals. [Emphasis added.]

The foregoing expression in the Senate Report was not intended to suggest that a district court action like the present separation order should affect jurisdictional changes where, as here, no *trivial* patent claim was *manipulatively* joined to gain the jurisdiction of this court.[10] On the contrary, there would be no need for the expression if Congress had not recognized that it had granted appellate jurisdiction to this court over the entirety of a case like that before us, where no trivial patent

claim was manipulatively joined to gain this court's jurisdiction.

Atari has not said that its patent count is frivolous or trivial, and we assume it is not. Nor does Atari say it included a trivial patent claim to manipulate jurisdiction and thereby ensure that its non-patent claims would be appealable to this court. On the contrary, Atari's post-filing, post-injunction manipulation was admittedly designed to keep its non-patent copyright claim *out* of this court. Atari's manipulative separation of a non-trivial patent claim to avoid this court's jurisdiction is but the flip side of the manipulative filing of trivial patent claims to acquire this court's jurisdiction recognized by Congress in the legislative history.

Indeed, it would be incongruous to suppose that a Congress concerned with *avoiding* appellate forum shopping through *manipulative joining* of trivial and frivolous patent counts would have intended to *permit* appellate forum shopping by the *manipulative separation* of a non-frivolous patent count attempted in the present case.

It is equally difficult to understand how it can be said that a congressionally expressed desire "to ensure the integrity of the jurisdiction of the federal court of appeals" against manipulation is met by permitting the manipulation of the integrity of that jurisdiction attempted here by counsel for Atari. Our jurisdiction is not dependent on the mere whim of counsel. It is settled by statute and confirmed in the legislative history.

### (5) *Other Applicable Intents of Congress*

In designing jurisdictional guidelines it is our duty, if possible, to implement all, not just some, of Congress' intents. Beyond

---

**9.** The case law is that such claims do not create jurisdiction. *Healy v. Sea Gull Specialty Co.,* 237 U.S. 479, 35 S.Ct. 658, 59 L.Ed. 1056 (1915). The quoted congressional statement that "frivolous allegations of patent questions will not create jurisdiction" thus accords with case law in the context of the legislation creating this court.

**10.** In its motion papers, Atari replaced the emphasized words with ellipses. Lack of candor

being suggested by JS & A, Atari employed undoctored quotes in its supplemental brief, but now says Congress was merely citing "an example" and that it really meant the *opposite* of what it said, i.e., that district courts should separate *non-trivial* patent claims *not* manipulatively joined by a plaintiff to gain the jurisdiction of this court.

the broad intent of Congress described above, these four intents are specifically applicable to this dispute: (a) to avoid bifurcation of appeals; (b) to avoid specialization of this court; (c) to avoid forum shopping in non-patent issues of law; and (d) to discourage appropriation by this court of areas of law not assigned to it.

### (a) *Avoidance of Bifurcated Appeals*

The House Report specifically states that the jurisdiction granted this court under § 1295(a)(1) should be *contrasted* with the jurisdiction of the Temporary Emergency Court of Appeals (TECA) as that court's jurisdiction was construed in *Coastal States Marketing, Inc. v. New England Petroleum Corp.*, 604 F.2d 179 (2d Cir. 1979):

> Paragraph (1) of new section 1295(a) gives the Court of Appeals for the Federal Circuit jurisdiction of any appeal in which the trial court jurisdiction was based, in whole or in part, on section 1338 of title 28 (which as stated above confers on the district courts original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyright and trademarks), except that jurisdiction of an appeal in a case involving a claim arising under any Act of Congress relating to copyrights or trademarks, and no other claims under section 1338(a) will continue to go to the regional appellate courts, pursuant to section 1294 of title 28. Cases will be within the jurisdiction of the Court of Appeals for the Federal Circuit in the same sense that cases are said to "arise under" federal law for purposes of federal question jurisdiction. *Contrast, Coastal States Marketing, Inc. v. New England Petroleum Corp.*, 604 F.2d 179 (2d Cir.1979).

House Report at 41.

In *Coastal States* the Second Circuit held that appeals involving Economic Stablization Act (ESA) issues and non-ESA issues must be bifurcated between TECA and the regional circuit courts, concluding that TECA has appellate jurisdiction only over ESA *issues*, not over the entire case in which those issues arose. In its opinion, the court distinguished the "issue jurisdiction" of TECA from the traditional "arising under" jurisdiction over a case.

In expressing its intent that this court's jurisdiction be *contrasted* to that set out in *Coastal States*, Congress specifically rejected Atari's present suggestion that this court should have only "issue" jurisdiction and that appeals involving patent and non-patent *issues* should be bifurcated. To adopt Atari's suggestion would therefore be to act in direct defiance of this intent of Congress.

Though JS & A and some *amici* point to the undue and unnecessary burden of cost, confusion, and delay caused by bifurcated appeals on courts, on litigants, and on the judicial process, Atari totally disregards the subject. Other *amici* actually recommend bifurcated appeals in all cases involving patent and non-patent issues, suggesting that litigants could always protect themselves by filing appeals in both courts. Those *amici* give no recognition to Congress' expressed intent to avoid every unnecessary creation of that burden.[11]

The statute itself, § 1295(a)(1), reflects an intent to avoid bifurcation of appeals. That Congress enacted a sole and specific statutory exception for § 1338 cases containing no patent or plant variety claims, confirms its intent to grant this court jurisdiction over *all* appeals in "§ 1338 *cases*" that *do* contain a patent claim, thereby avoiding bifurcation of appeals.

Congress' intent that this court have a non-bifurcated jurisdiction is further evidenced in its reliance on the traditional standards of federal question jurisdiction. The House Report states at 41:

> *Cases* will be within the jurisdiction of the Court of Appeals for the Federal Circuit in the same sense that *cases* are said to "arise under" federal law for the

---

11. For a criticism of the bifurcated appeals required by *Coastal States, see* Weichman and Heinzer, *An Unappealing Dilemma: Search for* the Appellate Jurisdiction of the Temporary Emergency Court of Appeals, 3 U. Bridgeport L.Rev. 305 (1982).

**1436**

purposes of Federal question jurisdiction. (emphasis added)

 In analogizing this court's appellate jurisdiction to federal "arising under" jurisdiction, Congress made clear its intent that this court's potential appellate jurisdiction over a *case* like that before us should initially attach at the complaint stage of the district court proceeding. The term "case" at the time of an actual determination of appellate jurisdiction refers collectively to the proceedings that transpired at the district court level when viewed pragmatically at the time of appeal. "Federal question jurisdiction" likewise is initially determined on the allegations in the complaint. *Luckett v. Delpark, Inc.,* 270 U.S. 496, 46 S.Ct. 397, 70 L.Ed. 703 (1926); *Healy v. Sea Gull Specialty Co., supra* note 9; *The Fair v. Kohler Die Co.,* 228 U.S. 22, 33 S.Ct. 410, 57 L.Ed. 716 (1913); *Brough v. United Steelworkers of America, AFL-CIO,* 437 F.2d 748, 749 (1st Cir.1971) and cases there cited.

 Appellate courts (other than TECA) hear appeals of judgments, not issues. Congress specifically stated its intent to avoid bifurcation on issues of appeals to this court, and refrained (except in respect of trivial patent claims manipulatively filed) from stating anything to the contrary. There appears nowhere in the legislative history any suggestion that the judges of this court would be somehow incapable of deciding any issue in a case properly appealable to it.[12] Hence Congress' statement that "cases" will be within the jurisdiction of this court, and its statement that our jurisdiction should be *contrasted* with the bifurcated appellate jurisdiction set forth in *Coastal States*

*Marketing, supra,* reflect the intent of Congress to avoid bifurcation of appeals to this court.

## (b) *Specialization*

Congress stated in the House Report at 19: "The proposed new court is not a specialized court."

In specifying that the President nominate its judges "from a broad range of qualified individuals" (Federal Courts Improvement Act of 1982, P.L. No. 97–164, § 168(2) 96 Stat. 25, 51 (1982)), Congress sought in the statute itself to "clearly send a message to the President that he should avoid undue specialization" in this court. House Report at 50.

Concerning the "objective" of decreasing unnecessary uncertainties in the patent system, the Senate Report states at 6, U.S. Code Cong. & Admin.News 1982, at 16:

> While the suggestion has been made that this objective might be accomplished simply by expanding the jurisdiction of the CCPA, the committee rejected such an approach as being inconsistent with the imperative of avoiding undue specialization within the Federal judicial system.

\* \* \* \* \* \*

The Court of Appeals for the Federal Circuit will not be a "specialized court" as that term is normally used.

The intent of avoiding specialization is reflected in the jurisdictional statute, § 1295(a)(1), which assigns this court "exclusive jurisdiction" over "an appeal from a final decision." If Congress had intended that this court be so "specialized" as to warrant being called, for example, a "patent court", it could have satisfied that in-

---

**12.** Indeed, the judges of one of our predecessor courts decided cases involving claims against the government for copyright infringement. *See, e.g., Williams & Wilkins Company v. United States,* 487 F.2d 1345 (Ct.Cl.1973), *cert. granted,* 417 U.S. 907, 94 S.Ct. 2602, 41 L.Ed.2d 211 (1974), *aff'd,* 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975). The Claims Court in its short life has tried and decided two cases involving copyright claims. *International Trade Management, Inc. v. United States,* 553 F.Supp. 402, 1 Cl.Ct. 39 (1982); *Shipkovitz v. United States,* 1 Cl.Ct. 400 (1983), *aff'd,* 732 F.2d 168 (Fed.Cir.1984). Though, as indicated in the text, *infra,* this court will, in appeals from district courts, apply the law of the involved circuit to issues over which it normally possesses no jurisdiction, it will of course follow its own and its predecessors' precedents in appeals from the Claims Court and other tribunals from which appeals lie only to this court. *South Corp. v. United States,* 690 F.2d 1368, 1215 USPQ 657 (Fed.Cir.1982).

tent in many ways. Its specific adoption in the statute itself of "or in part on § 1338" can be interpreted only as an expression of its intent that this court should review all issues in a case in which the complaint contains a continuing non-frivolous patent count, as does Atari's in this case. Moreover, our jurisdiction is set forth in § 1295(a)(1) as over the "final decision" of the district court, *not* over "the patent portion of the final decision".

▇▇▇ Thus Atari's argument that a complaint is not a case, and that a mere procedural separation of a patent count separates this court from its jurisdiction over all other issues, is directly contrary to the public policy reflected in Congress' intent to avoid specialization. That this court's jurisdictional mandate includes a responsibility to contribute to uniformity in the national law of patents does not mean it is authorized to do nothing else; nor does that responsibility warrant Atari's and some *amici's* repeated reference to achievement of that uniformity as this court's only purpose. To accept Atari's argument would undermine a major congressional justification for the broad jurisdictional grant set forth in Section 1295 of Title 28,[13] and would be directly contrary to the avoidance of specialization expressly intended by Congress.

### (c) Forum-Shopping

Congress was alert to the possibility that its solution to the long-standing forum shopping problem in respect of patent claims might be replaced (as was here attempted) by a new forum shopping problem in respect of non-patent claims:

"The Committee is concerned that the exclusive jurisdiction over patent claims of the new Federal Circuit not be mani-

pulated. This measure is intended to alleviate the serious problems of forums [sic] shopping among the regional courts of appeals on patent claims by investing exclusive jurisdiction in one court of appeals. *It is not intended to create forum shopping opportunities between the Federal Circuit and the regional courts of appeals on other claims."* [Emphasis added]

Senate Report at 19–20, U.S.Code Cong. & Admin.News 1982, at 29–30.

Underlying the briefs of Atari and some *amici* is an unspoken assumption that by appealing to this court JS&A would automatically escape the law of the Seventh Circuit governing preliminary injunctions against contributory copyright infringement. The assumption then becomes the basis for arguing that the only way to meet Congress' intent to avoid forum shopping on non-patent issues is to limit this court to patent issues. As discussed in section (6) below, the assumption is unfounded.

Notwithstanding its having admittedly moved for separation with the sole purpose of directing an appeal to a particular forum, Atari accuses JS&A of "forum shopping," saying it appealed here to escape the law of the Seventh Circuit concerning contributory infringement of copyrights in video games. The corollary is that Atari filed its separation motion and now its transfer motion to gain the *benefit* of what it says is the Seventh Circuit's "strong stand in protecting copyrights in video games", citing *Midway Mfg. Co. v. Artic International, Inc.,* 704 F.2d 1009 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 90, 78 L.Ed.2d 98 (1983) and *Atari, Inc. v. North American Philips Consumer Electronics Corp.,* 672 F.2d 607 (7th Cir.), *cert. denied,*

---

**13.** Though the present motion deals with an appeal from a decision of a district court in a patent case under § 1338, this court hears appeals from judgments of district courts in "Little Tucker Act" cases. *Spagnola v. Stockman,* 732 F.2d 908 (Fed.Cir.1984); *Alaniz v. Office of Personnel Management,* 728 F.2d 1460 (Fed.Cir. 1984); *Corwin v. Lehman,* 724 F.2d 1577 (Fed. Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 2680, 81 L.Ed.2d 876 (1984) and *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir.1983). Most if not all considerations of this court's jurisdiction here expressed may be considered applicable, under similar circumstances, to cases filed under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), e.g., references here to "patent claims" and "non-patent claims" may be read as applicable to "Little Tucker Act claims" and "non-Little Tucker Act claims".

459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 145 (1982). Forum shopping is a game at which two can play.

When the long, expensive game was finally over, earlier forum shoppers knew which circuit law would control. Even that feature would be absent if the appellate forum were determinable by procedural motions and could not be known till trial's end. "As you go" forum shopping might or might not take as long. It would not be likely to cost less. It would be no improvement. A major intent of Congress applicable here is avoidance of forum shopping in all its guises and in relation to all types of claims.

### (d) *Self-Appropriation*

Congress acknowledged a concern of FCIA opponents that a plaintiff suing for violation of the antitrust laws, for example, might manipulatively join an incidental patent claim in hopes of obtaining a ruling free of the antitrust precedents of the involved circuit:

> Thus, for example, mere joinder of a patent claim in a case whose gravamen is antitrust should not be permitted to avail a plaintiff of the jurisdiction of the Federal Circuit *in avoidance of the traditional jurisdiction and governing legal interpretations of a regional court of appeals.* [Emphasis added]

Senate Report at 20, U.S.Code Cong. & Admin.News 1982, at 30.

> Concern has been expressed that the Court of Appeals for the Federal Circuit will appropriate for itself elements of Federal law under its section 1295(a)(1) grant of jurisdiction.

Senate Report at 19, U.S.Code Cong. & Admin.News 1982, at 29.

The House Report, at 41, notes concern expressed to it that the " 'in part' jurisdiction of the new court ... will be a locomotive that will pull all sorts of related [sic—unrelated?] issues into the terminal of the court's appellate jurisdiction".

14. The House Report at 40 states:
Both courts have strictly construed their jurisdiction. They have not allowed inferential

Congress' passage of the FCIA, in light of the foregoing history, reflects its expectation that this court would not appropriate or usurp for itself a broad guiding role for the district courts beyond its mandate to contribute to uniformity of the substantive law of patents, plant variety protection, and the Little Tucker Act.

In the present case, JS & A could escape the governing circuit law, and this court could engage in "self-appropriation" only if in considering the appeal this court were to refuse to look to the discernable and established law of the Seventh Circuit governing the fact pattern giving rise to the appealed injunction order. No reason exists for this court to follow that disruptive course in this case. As discussed in section (6) below, the workings of the entire federal judicial system, as well as the concern for "self-appropriation" recognized by Congress, supply excellent reasons not to do so here. An even more compelling reason, as indicated in section (7) below, is that following either of those courses would make impossible this court's compliance in this case with *all* the intents expressed by Congress in creating this court.

In avoiding appropriation of elements of law not exclusively assigned to it in this case, this court responds to the confidence Congress displayed in rejecting the concern about "self-appropriation" expressed by opponents of the FCIA. It also justifies Congress' reliance on the judicial restraint exhibited by the courts that served so long as predecessors of this court.[14]

### (6) *Applicable Law*

In *In re International Medical Prosthetics Research Associates, Inc.*, 739 F.2d 618, 620 (Fed.Cir.1984) (published order) a motions panel of this court said:

> A need exists to avoid the wastefulness and uncertainty of bifurcated appeals and, at the same time, to maintain a uniformity of guidance available to individual district courts in such purely procedural matters as disqualification.

and unwarranted increases in their own respective jurisdictions (citations omitted).

Dealing daily with such procedural questions in all types of cases, a district court cannot and should not be asked to answer them one way when the appeal on the merits will go to the regional circuit in which the district court is located and in a different way when the appeal will come to this circuit. That potential problem is obviated, however, when this court applies the same guidance previously made available by the circuit (here the Ninth) having authority over the district court under 28 U.S.C. § 1294.

In *W.L. Gore & Assoc., Inc. v. Int'l Med. Prosthetics Research Assoc., Inc.*, 745 F.2d 1463 (Fed.Cir.1984) the merits panel reviewed and applied Ninth Circuit law.

In *Panduit Corp. v. All States Plastic Manufacturing Co., Inc.*, 744 F.2d 1564 at 1574 (Fed.Cir.1984), this court said:

> An equal, if not more important, consideration is that district judges also should not be required to decide cases in this fashion. For instance, practitioners and district judges in the Seventh Circuit should not be saddled with two different sets of requirements regarding attorney disqualification, one for cases appealed to the Seventh Circuit and one for cases appealed to this court.

*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 909 (Fed.Cir.1984), this court said:

> Accordingly, we deem it appropriate here to decide non-patent matters in the light of the problems faced by the district court from which each count originated, including the law there applicable. In this manner, we desire to avoid exacerbating the problem of intercircuit conflicts in non-patent areas. A district court judge should not be expected to look over his shoulder to the law in this circuit, save as to those claims over which our subject matter jurisdiction is exclusive. [Footnote omitted.]

In the trademark portion of this case, we will be guided by the relevant law in the Ninth Circuit, to the extent it can be discerned, and not require the district court here to follow conflicting rules, if any, arrived at in other circuits.

In *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 765 (Fed.Cir.1984) this court applied to an antitrust claim the requirement for proof of relevant market set forth in three opinions of the circuit (the Ninth) in which the district court sat.

The freedom of the district courts to follow the guidance of their particular circuits in all but the substantive law fields assigned exclusively to this court is recognized in the foregoing opinions and in this case.

The district court in this case was required, 1B J. MOORE'S FEDERAL PRACTICE ¶ 0.402[1] (2d ed. 1982), to follow the Seventh Circuit's established guidance in conducting the judicial process leading to the injunction order appealed from. It would be at best unfair to hold in this case that the district court, at risk of error, should have "served two masters", or that it should have looked, Janus-like, in two directions in its conduct of that judicial process. It is, moreover, difficult to envisage how the district court might have disregarded the established guidance of its circuit in favor of a guess respecting what this court's view might be respecting the appealed injunctive order.

Further, it was expressly and precisely Atari's expectation that, in disposing of the appeal from the district court's injunctive order in this case, this court would disregard the law of the Seventh Circuit that produced here the very forum shopping on a non-patent claim against which Congress cautioned, as above indicated, in the Senate Report at 30. Atari's expectation also indicated its failure to recognize that a preliminary injunction against contributory copyright infringement is not a matter within the substantive law areas (patents, plant variety protection, and the Little Tucker Act) that have been substantially removed

by the FCIA from the guidance-supplying role of the regional circuit courts.[15]

The concept of a circuit looking in this case to the established, discernable law of the involved circuit is unique, but no more unique than is this court and the congressional pioneering that created it.[16] The concept is based more on systemic practicality than on judicial humility, yet the task remains a challenge, for the path to the established law of the involved circuit may or may not be easily discernable and clearly marked. It will be the role and duty of the advocates to brief and argue in the appeal before the merits panel of this court, sitting as though it were a panel of the Seventh Circuit, just as they would if they were appearing in this case before that circuit.

That this court will apply the law of the Seventh Circuit in this case does not suggest that it should or "may as well" grant the present transfer motion. This court has jurisdiction over the appeal in this case because the statute so mandates, not because it will apply circuit law in the process of meeting all of the intents of Congress.

### (7) Meeting All Intents of Congress

In this case, it is only by exercising its statutorily mandated appellate jurisdiction over the entire case and by following the preferred course of applying the established, discernable law of the Seventh Circuit that this court can meet clearly all the intents applicable to cases like the present and expressed by Congress when it created this court. As above indicated, Congress intended to avoid: (a) bifurcation of appeals in cases like the present; (b) "specialization" of this court; (c) encouragement of forum shopping on non-patent claims; and (d) appropriation by this court of elements of law not exclusively assigned to it. The statutory and preferred course insures that there is one, non-bifurcated appeal process to one court, avoids the specialization involved in limiting this court to appeals on patent "issues" alone, discourages the forum shopping attempted here by rendering it fruitless, and avoids appropriation of procedural and legal elements involved in the district court's grant of the preliminary injunction for contributory copyright infringement.

In considering the present motion for transfer, no other course meets all the intents of Congress. If this court were to grant the motion, it would be meeting the intent of avoiding self-appropriation of elements of law not within its exclusive jurisdiction, but it would be acting contrary to the intents of avoiding bifurcation of appeals and specialization of this court. It would also encourage repetition of the forum shopping attempted here by Atari. If this court were to deny the present motion for transfer, and were also to refuse in considering the appeal to look to the established view of the applicable law discernably expressed by the Seventh Circuit, it would meet the intents of avoiding bifurcation of appeals and specialization of this court, but would be acting contrary to the intent of avoiding self-appropriation of elements of law not within its exclusive jurisdiction. It would also encourage forum shopping by seeming to provide an escape from that law of the Seventh Circuit.

Accordingly, it is ORDERED:

(1) That the motion for transfer is denied.

(2) That the parties submit briefs, prepared in light of Seventh Circuit precedents relating to the subject matter of the appeal, in accord with the schedule set forth in the

---

15. Though we do not here explore the circumstances, it may well be that regional circuits will be required, in comparatively rare instances, to decide questions of substantive law in the three listed fields. In such instances, the regional circuit courts may find the body of decisions of this court a useful reference, in light of the considerations here expressed concerning the burden of conflicting views on the district courts.

16. That this court applies the law of the involved circuit does not, of course, constitute an open-sesame to appeals from judgments in cases in which the district court's jurisdiction was not based in part on the patent or plant variety protection provisions of § 1338 or on § 1346(a)(2).

rules of this court, JS & A's initial brief being due on January 7, 1985.

FRIEDMAN, Circuit Judge, concurring in the result.

I concur in the result the court reaches in this case of denying the motion to transfer this appeal to the Court of Appeals for the Seventh Circuit. I would base the denial of the motion on a narrow ground the court apparently abjures: that since the district court's order did not necessarily sever or separate the copyright claim from the other claims (both patent and nonpatent) for separate trial and decision, this is a case in which there is no doubt that the jurisdiction of the district court rests in part on 28 U.S.C. § 1338. As the court points out, the district court has not indicated what the consequences of its separation will be; it is unclear whether the copyright issue will be tried and decided separately from the other issues, or whether the court will treat the copyright aspect as a separate case or as merely one part of a case containing multiple claims.

It is uncertain whether the district court is treating this as a single case despite the separation order. There is no basis upon which that order may properly be viewed as somehow ousting us of our exclusive jurisdiction over an appeal in a case in which the jurisdiction of the district court rests in part on 28 U.S.C. § 1338. The motion to transfer the appeal to the Seventh Circuit thus must be denied.

I see no reason to discuss in the order denying the motion the numerous and far-ranging issues the court addresses. It is time enough to consider those other issues in future cases in which they are directly presented and must be decided. I would issue only a narrow order denying the motion to transfer on the ground I have stated.

DAVIS, Circuit Judge, concurring in the result.

I join in the result on the ground that the "separation" order in this case was not a true severance of the patent claim (in the sense envisaged by Congress) but rather an artificial (and perhaps temporary) separation motivated solely by the purpose to direct the appeal of the copyright injunction to the Seventh Circuit—*i.e.*, not a true severance into distinct cases for all purposes. Chief Judge Markey points out in detail the facts and circumstances compelling this conclusion, but I do not join in his order because (a) though it purports to put aside all other types of cases and issues, its discussion is so unnecessarily broad in very many places that it tends to suggest (or lead to) particular answers in those other cases, answers with which I am not ready to agree (or even to consider); and (b) the order, in my view, is too strong, too broad, and not fine-tuned enough (again, unnecessarily) in its appraisal of the statutory language, the legislative history, and the Congressional purposes. It bites off far more than it needs to or should chew. Because it seems to give mixed signals, I am afraid that it does little to truly reduce confusion in the other cases bound to come to this court. In a word, I would confine this decision to the actual case before us—a meretricious separation (not a severance) requested and made solely for the purpose of manipulating appellate jurisdiction.

I do not disagree, in this instance, to the application of Seventh Circuit copyright law. There is no reason here for the court to depart from that law, or to develop or apply the relevant copyright law on its own. There is also no need to go further and trench far into the general question of the substantive law we should apply in non-patent areas in District Court appeals.