UNITED STATES of America, Appellant and Cross-Appellee,

v.

TITO CAMPANELLA SOCIETA DI NAVIGAZIONE, owners of the steam screw vessel now named THE TITO CAMPANELLA, but formerly the Samsylarna, Appellee and Cross-Appellant.

No. 6822.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 9, 1954.

Decided Dec. 23, 1954.

See also 214 F.2d 457.

Melvin Richter, Atty., Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., and L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., on the brief), for appellant and cross-appellee.

Barron F. Black, Norfolk, Va. (Vandeventer, Black & Meredith, Norfolk, Va., Fink, McNamee & Pavia, Samuel Miles Fink, New York City, and Sam Blecher, Brooklyn, N. Y., on the brief), for appellee and cross-appellant.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is an appeal and a cross appeal in admiralty in a proceeding brought by the United States for the forfeiture of the vessel Tito Campanella, formerly the Samsylarna, for alleged violation of sections 9 and 41 of the Shipping Act of 1916, 46 U.S.C.A. §§ 808 and 839. The District Judge sustained exceptions to the libel and dismissed the proceeding but signed a certificate of reasonable cause for the seizure and both the United States and the owner have appealed.

The facts are that the Samsylarna, a Liberty cargo ship of 7,210 gross tons, was built at Baltimore for the United States Maritime Commission in 1944, lend-leased to the British Ministry for War Transport, and torpedoed August 5, 1944. It was never documented under the laws of the United States. On January 5, 1949, the Maritime Commission sold all the right, title and interest of the United States in and to the vessel "as is, where is" to Gabriel E. Gabrielidis, a citizen of Greece and resident of Cairo, for $88,000. It was a condition of the

sale that the buyer would scrap or dismantle the vessel and not operate it, and provision was made for payment of liquidated damages for violation of this condition. Gabrielidis sold parts of the wreck to various parties, and the remainder to an Egyptian subject, who in turn sold it in 1949 to Tito Campanella Societa di Navigazione, an Italian corporation, the present owner, which rebuilt the ship, renamed her the Tito Campanella, and placed her under Italian registry.

On May 30, 1953, the Tito Campanella, fully loaded and ready to sail, was seized by the Collector of Customs at Norfolk. The same day a libel for forfeiture was filed against the vessel, reciting the conditions of the sale to Gabrielidis and claiming that forfeiture had been incurred not under those conditions, but under paragraphs 3 and 4 of 46 U.S.C.A. § 808 and 46 U.S.C.A. § 839. The master filed claim on behalf of the owner and excepted to the libel on the ground that the vessel had never been documented under the laws of the United States, but only under the laws of Great Britain. The libel was thereupon amended to recite all four paragraphs of 46 U.S.C.A. § 808 as authority for the forfeiture. The trial judge sustained exceptions to the libel as amended and dismissed it, holding that 46 U.S.C.A. §§ 808 and 839 did not apply here, as the former owner, the United States, is not a citizen of the United States, and the vessel had never been documented under the laws of the United States.

We think that the decree dismissing the libel was clearly correct. Section 9 of the Shipping Act of 1916 as amended, 46 U.S.C.A. § 808, which is the crucial statute, is as follows:

"Any vessel purchased, chartered, or leased from the United States Maritime Commission, by persons who are citizens of the United States, may be registered or enrolled and licensed, or both registered and enrolled and licensed, as a vessel of the United States and entitled to the benefits and privileges appertaining thereto: Provided, That foreign-built vessels admitted to American registry or enrollment and license under this chapter, and vessels owned by any corporation in which the United States is a stockholder, and vessels sold, leased, or chartered by the commission to any person a citizen of the United States, as provided in this chapter, may engage in the coastwise trade of the United States while owned, leased, or chartered by such a person.

"Every vessel purchased, chartered, or leased from the commission shall, unless otherwise authorized by the commission, be operated only under such registry or enrollment and license. Such vessels while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner, in whole or in part, or hold any mortgage, lien, or other interest therein.

"Except as provided in section 1181 of this title, it shall be unlawful, without the approval of the United States Maritime Commission, to sell, mortgage, lease, charter, deliver, or in any manner transfer, or agree to sell, mortgage, lease, charter, deliver, or in any manner transfer, to any person not a citizen of the United States, or transfer or place under foreign registry or flag, any vessel or any interest therein owned in whole or in part by a citizen of the United States and documented under the laws of the United States, or the last documentation of which was under the laws of the United States.

"Any such vessel, or any interest therein, chartered, sold, transferred, or mortgaged to a person not a citizen of the United States or placed under a foreign registry or flag, or operated, in violation of any provision of this section shall be forfeited to the United States, and who-

ever violates any provision of this section shall be guilty of a misdemeanor and subject to a fine of not more than $5,000, or to imprisonment for not more than five years, or both."

█ █ It is perfectly clear that the third paragraph of the statute above quoted, which was the section originally relied on, has no application to the facts here, since the transfer by the Maritime Commission for the United States was not made by a citizen but by the government itself, and since the vessel had never been documented under the laws of the United States. We think it equally clear that the second paragraph of the statute has no application, since the vessel was not sold to a citizen of the United States and since only vessels owned by citizens of the United States are entitled to registry, or enrollment and license under the laws of this country.

█ It will be noted that the first paragraph of the section provides for the registration or enrollment and license of vessels "purchased, chartered or leased from the Maritime Commission *by persons who are citizens* of the United States" (Italics supplied) and that the second paragraph provides that vessels purchased, chartered or leased from the Commission shall, unless otherwise authorized by the Commission, be operated only under such registry or enrollment and license. There is no suggestion that the provisions of this paragraph were intended to have any application to a vessel sold to a citizen of a foreign country who could not register or enroll it under our laws.[1]

█ The forfeiture provisions of the fourth paragraph were clearly intended to apply to vessels sold to citizens of the United States and operated under foreign registry in violation of the provisions of the second paragraph, or to ves-

sels which had been owned by citizens of the United States and documented under the laws of the United States and, without the consent of the Maritime Commission, placed under foreign registry or sold to a person not a citizen, in violation of the provisions of the third paragraph. Congress could not have intended that where sale of a vessel is made to a foreigner, as authorized for instance by 46 U.S.C.A. §§ 864 and 865, forfeiture should result from operation of the vessel in the only way that it could be operated, i. e., under foreign registry.

█ Nothing in 46 U.S.C.A. § 839 helps the position of the government. It is provided by that section that, where approval of the Maritime Commission is required to render a transaction lawful and approval is given upon condition, violation of the condition invalidates the approval and authorizes forfeiture just as though the act had been done without approval. As we have seen, however, approval of the sale here by the Maritime Commission was not required because it was not a sale of a vessel owned by a citizen of the United States and documented under the laws of the United States.

█ Only one section of the Shipping Act of 1916 permitted sales of vessels to aliens. This was section 8, 39 Stat. 730, later repealed,[2] which allowed the sale to aliens of vessels unfit for the purposes of the act. It was, of course, not intended that vessels so sold could be operated only under United States registry, which could not be obtained for them.

█ The history of the legislation shows clearly, we think, that the purpose of Congress in its passage and in the various amendments that were made from time to time was to prevent the operation under foreign registry of vessels owned by citizens of this country or of the transfer, without the approval of the

1. That only vessels owned by citizens of the United States or by corporations chartered under the laws of the United States or a state thereof are entitled to registry or enrollment under the laws of

the United States, see 46 U.S.C.A. §§ 11 and 252.
2. Section 2(a) (5) of the Act of June 5, 1920, 41 Stat. 988.

Commission, to foreign ownership of vessels owned by them and documented under our laws. See Senate Report 689, 64th Congress, 1st Session, on H.R. 15455, pp. 47–48; House Report 568, 65th Congress, 2nd Session, Congressional Record 65th Congress, 2nd Session, pp. 8026–8028. The purpose of the amendment made by the Act of 1938, 52 Stat. 964, which put the last two sections of 46 U.S.C.A. § 808 in their present form without changing the first two sections, was to plug a loophole in the original act which permitted the sale by a citizen of a vessel which was not documented. See The Helori, D.C., 24 F.2d 710. There is nothing in either the language or the history of the section to indicate that the prohibition against operation under foreign registry was intended to apply to ships lawfully sold by the government itself to foreigners; and since foreigners may not register vessels owned by them under the laws of the United States, we do not think that Congress could have intended that such interpretation be placed upon the language of the section. We do not think there is any room for doubt as to this; but, if there were, it is too well settled to admit of argument that the doubt should be resolved against forfeiture, since "Forfeitures are not favored; they should be enforced only when within both letter and spirit of the law". United States v. One 1936 Model Ford V–8 Deluxe Coach, 307 U.S. 219, 226, 59 S.Ct. 861, 865, 83 L.Ed. 1249. No question is presented in the case with respect to the rights of the United States to damages or forfeiture under the provisions of the contract of sale. Forfeiture is asked only because of alleged violation of the statutory provisions discussed above, and, as stated, we think it clear that forfeiture under these is not authorized.

On the cross appeal, the owner of the vessel complains of a certificate of reasonable cause entered by the trial judge pursuant to 28 U.S.C. § 2465. The owner contends that, as the libel was dismissed on exceptions and not after a trial on the merits, the trial judge was not authorized to enter such certificate by the statute which provides:

"Upon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution."

We entertain no doubt as to the power of the court to enter the certificate upon a decree such as that entered below, the effect of which was to put an end to the proceeding. The purpose of the statute is to protect against liability for costs or damages on account of the institution of such proceedings where there is reasonable cause for instituting them; and this is as important where there is a dismissal of the libel on exceptions as where there has been a trial on the merits. The owner relies upon our decision in Agnew v. Haymes, 4 Cir., 141 F. 631, in which we held that, where no certificate had been entered, the defense of reasonable cause may be asserted in an action for damages on account of the seizure. It is manifest, however, that such assertion does not give the full measure of protection which the statute contemplates; for, where the certificate is entered, the officer making the seizure will not be called upon to defend an action on account thereof. Where there is dismissal of the proceeding on exceptions to the libel, the trial judge should, of course, inquire into the facts surrounding the institution of the proceeding, but that was done in this case and counsel for both sides filed affidavits with regard thereto.

It has been held that the action of the court in entering certificate

under the statute is not subject to review. United States v. Abatoir Place, 106 U.S. 160, 161, 1 S.Ct. 169, 27 L.Ed. 128; United States v. 83 Sacks of Wool and 5,974 Sheepskins, D.C., 147 F. 747, 749. However that may be, we find no basis here for disturbing the judge's action in granting the certificate even if we had the power to do so. Questions of law were involved upon which there had been no adjudication, there had unquestionably been a breach of the condition upon which the vessel had been sold and the opinion prevailed among officials of the Maritime Administration as well as among officials in the Department of Justice that a forfeiture under the statute had been incurred. The question was not free of difficulty; and we think that the trial judge was thoroughly justified in giving the certificate. See United States v. Riddle, 5 Cranch 311, 312–313, 3 L.Ed. 110; Averill v. Smith, 17 Wall. 82, 92, 21 L.Ed. 613; United States v. The Recorder, 27 Fed.Cas. pages 723, 724, No.16,130; United States v. Twenty-Six Diamond Rings, 28 Fed,Cas. pages 288, 289, No.16,572.

Affirmed.