**UNITED STATES of America, Plaintiff–Appellant,**

v.

**ONE (1) 1979 CADILLAC COUPE DE VILLE VIN 6D4799266999 Together With All Items Contained Therein, Defendant,**

**and**

**David Wayne Baker, Claimant-Appellee.**

**No. 87–1212.**

United States Court of Appeals, Federal Circuit.

Nov. 19, 1987.

John F. Daly, Dept. of Justice, of Washington, D.C., argued for plaintiff-appellant. With him on the brief were Richard K. Willard, Asst. Atty. Gen., Louis G. DeFalaise, U.S. Atty., and Douglas N. Letter.

David Wayne Baker, Lexington, Ky., submitted pro se.

Before FRIEDMAN, Circuit Judge, MILLER, Senior Circuit Judge, and NIES, Circuit Judge.

FRIEDMAN, Circuit Judge.

In this case, here on appeal from the United States District Court for the Eastern District of Kentucky, the government seized a motor vehicle that allegedly was used to facilitate a narcotics transaction. After the government lost a proceeding to forfeit the vehicle, the district court ordered the government not only to return the vehicle, but also to pay the owner of the vehicle the amount by which its value had decreased while it was in government custody. The government's appeal challenges this award of damages. We reverse.

I

In June 1984, government agents arrested David Wayne Baker for conspiracy to distribute cocaine and seized his 1979 Cadillac which they contended had been used to facilitate the drug violation. Baker was indicted for distribution of cocaine and conspiracy to distribute. These charges were dismissed as part of a plea bargain agreement under which Baker pleaded guilty to charges stemming from an earlier incident of cocaine distribution. He was sentenced to 15 years' imprisonment. *See Baker v. United States*, 781 F.2d 85, 87 (6th Cir.),

*cert. denied,* 107 S.Ct. 667, 93 L.Ed.2d 719 (1986).

Following resolution of the criminal charges, the United States in August 1985 instituted an *in rem* action pursuant to 21 U.S.C. § 881(a)(4), seeking forfeiture of the vehicle. That statute provides for forfeiture of "[a]ll vehicles, ... which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [illegal drugs]...." The government contended that Baker had used the vehicle to facilitate the distribution of cocaine on the day of his arrest.

█ Under the statute, the government need only show probable cause to institute a forfeiture action. This showing then shifts the burden to the claimant to prove, by a preponderance of the evidence, that the property is not subject to forfeiture. *See United States v. Fifty Thousand Dollars,* 757 F.2d 103, 105 (6th Cir.1985); *United States v. $2,500 in United States Currency,* 689 F.2d 10, 12 (2d Cir.1982), *cert. denied,* 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 123 (1984).

The district court found that "the proof in regard to the involvement of his Cadillac, ... minimally met the standard of probable cause defined as 'a reasonable ground for a belief of guilt, supported by less than prima facie proof but more than mere suspicion.'" *United States v. One (1) 1979 Cadillac Coupe,* No. 85-352, slip op. at 3 (E.D.Ky. Dec. 29, 1986) (quoting *United States v. One 1979 Porsche Coupe,* 709 F.2d 1424, 1427 (11th Cir.1983)).

The forfeiture case was then tried to a jury, which returned a verdict for Baker because it found that the vehicle "was not used to facilitate a drug transaction...." In that situation, 28 U.S.C. § 2465 provides that "[u]pon the entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant...."

In a subsequent hearing, the court ordered the government to return the vehicle to Baker and to pay him $4,050, which represented the decrease in the value of the car from $7,500 at the time of seizure to the $3,450 National Automobile Dealers Association's (blue book) value at the date of the court's ruling (December 29, 1986). The court ruled "pursuant to *United States v. One 1965 Chevrolet Impala Convertible,* 475 F.2d 882 ( [6th Cir.] 1973), that this is a deprivation of property right issue." The court stated that Baker "was deprived of the use of his automobile ... [and] [t]he government now intends to return the car with a simple 'Sorry' and no recognition that for two and one-half years the property, while in the government's hands, decayed in value.... The government seized property worth $7500 and that is what is to be returned—or its equivalent value." *One (1) 1979 Cadillac Coupe,* slip op. at 3–4.

## II

█ A. The district court did not specify the ground upon which it had jurisdiction to require the government to pay Baker the amount by which the vehicle had decreased in value while in government custody. The court's citation to and reliance on *United States v. One 1965 Chevrolet Impala Convertible,* 475 F.2d 882 (6th Cir.1973), suggests that the court was relying upon the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1982), since in *One 1965 Chevrolet* the court stated that "the Tucker Act, 28 U.S.C. § 1346(a)(2) ... provides the jurisdictional basis for the present claims against the Government for the value of the depreciation of the automobiles." 475 F.2d at 886 (footnote omitted). Indeed, that statute, which gives the district courts concurrent jurisdiction with the United States Claims Court over claims against the United States not exceeding $10,000 "founded either upon the Constitution, or any Act of Congress ...," is the only possible basis upon which the jurisdiction of the district court could have rested.

Under 28 U.S.C. § 1295(a)(2) (1982), we have exclusive jurisdiction over an appeal from a final decision of a district court where "the jurisdiction of that court was based, in whole or in part, on section

1346[ (a)(2) ] of this title [28]." We have jurisdiction over this appeal under section 1295(a)(2).

■ B. The Tucker Act "does not create any substantive right enforceable against the United States for money damages." *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983) (quoting *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980) quoting *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)). The Supreme Court further stated that

> [a] substantive right must be found in some other source of law, such as "the Constitution, or any Act of Congress, or any regulation of an executive department" ... and the claimant must demonstrate that the source of substantive law he relies upon "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained."

463 U.S. at 216–17, 103 S.Ct. at 2967–68 (quoting *Testan*, 424 U.S. at 398–400, 96 S.Ct. at 953–54 quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967)).

The district court here apparently concluded that 28 U.S.C. § 2465 authorized it to require the government to pay Baker the amount the value of the vehicle had declined while it was in government custody. The court's statements that "this is a deprivation of property right issue" and that Baker was "deprived of the use of his automobile" further suggest that the court may have viewed the government's impoundment of the car as a temporary taking, for which the court awarded just compensation based upon the reduction in the value of the car during the period of the taking. Prior to discussing these two issues, however, we consider a threshold question: whether, in deciding those issues, we apply the law of this court or the law of the Sixth Circuit, the court to which appeal from the district court generally lies.

C. Although 28 U.S.C. § 1295 gives this court "exclusive jurisdiction" over appeals in the various categories of cases there specified, in exercising that jurisdiction we have not always applied the law of this circuit. Instead, we have recognized that the district courts should "follow the guidance of their particular circuits in all but the substantive law fields assigned exclusively to this court...." *Atari, Inc. v. JS & A Group, Inc.*, 747 F.2d 1422, 1439, 223 USPQ 1074, 1087 (Fed.Cir.1984). We therefore have applied the law of the appropriate regional circuit in deciding such issues as the propriety of a preliminary injunction in a copyright infringement case (*Atari*), trademark infringement and validity (*Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903, 223 USPQ 982 (Fed.Cir. 1984)), violation of the antitrust laws (*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 220 USPQ 763 (Fed.Cir.), *cert. denied*, 469 U.S. 821, 105 S.Ct. 95, 83 L.Ed.2d 41 (1984)), disqualification of attorneys (*Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 223 USPQ 465 (Fed.Cir.1984)), and various procedural rulings (*see Truswal Systems Corp. v. Hydro-Air Eng'g*, 813 F.2d 1207, 2 USPQ2d 1034 (Fed.Cir.1987)).

■ As the Supreme Court recently noted, "[a] motivating concern of Congress in creating the Federal Circuit was the 'special need for nationwide uniformity' in certain areas of the law." *United States v. Hohri*, — U.S. —, —, 107 S.Ct. 2246, 2251, 96 L.Ed.2d 51 (1987). The Court also referred to "the evident congressional desire for uniform adjudication of Little Tucker Act claims...." *Id.* In the light of this congressional intent to insure uniformity in the adjudication of Tucker Act cases, reflected in the grant of exclusive jurisdiction to this court to review those cases, we conclude that we should apply the law of this circuit and not that of the regional circuits, in deciding the merits of those cases.

In appeals in Tucker Act cases coming from the United States Claims Court, over which that court has exclusive jurisdiction of claims for more than $10,000 (28 U.S.C. § 1491), we apply the law of this circuit. *See Bray v. United States*, 785 F.2d 989,

991 (Fed.Cir.1986). It would contravene the intent of Congress to achieve uniformity in the adjudication of Tucker Act claims for us to apply regional circuit law in appeals from district court Little Tucker Act decisions, since those cases usually involve the same legal issues as do appeals from the Claims Court.

Our decision in *Heisig v. United States,* 719 F.2d 1153 (Fed.Cir.1983), supports, if not compels, our conclusion to apply the law of this circuit. That was an appeal from a district court decision in a Little Tucker Act case involving a claim for military pay and retirement. In holding that the district court should apply the same standard in resolving military pay cases that the Claims Court applied in those cases, we stated:

> However, judgments of the district courts in "Little Tucker Act" cases were, prior to October 1, 1982, reviewable by the regional circuit courts of appeal under the precedents of those respective circuits. It is appropriate, now that this court has exclusive jurisdiction of such appeals, to eliminate doubt, if any there be, as to what standard and what precedents are applicable to the district courts in military disability retirement cases adjudicable by such courts. Logic, as well as the express congressional desire for uniformity, dictate that similar standards of review and the precedents of this circuit should obtain in a proceeding in a district court that is substantially identical, except for jurisdictional amount, to one in the Claims Court, and we so hold.

*Id.* at 1156 (footnote omitted).

Although *Heisig* dealt with the law that the district courts are to apply in military pay cases under the Little Tucker Act, its rationale is equally applicable in determining the law that this court is to apply in appeals both in those cases and in other cases in which the jurisdiction of the district court rests on the Little Tucker Act.

■ We therefore hold that in reviewing the district court's decision in this case requiring the government to pay Baker the amount by which the value of his vehicle declined while it was in government custo-

dy, we apply the law of this circuit and not the law of the Sixth Circuit.

## III

A. 1. Section 2465 provides:

Upon entry of judgment for the claimant in any proceeding to condemn or forfeit property seized under any Act of Congress, such property shall be returned forthwith to the claimant or his agent; but if it appears that there was reasonable cause for the seizure, the court shall cause a proper certificate thereof to be entered and the claimant shall not, in such case, be entitled to costs, nor shall the person who made the seizure, nor the prosecutor, be liable to suit or judgment on account of such suit or prosecution.

■ On its face, this provision requires only that, if the claimant prevails in a forfeiture proceeding, "the property seized" shall be returned to the claimant. It does not say "the equivalent value of the property seized" shall be returned. Moreover, the statute expressly deals with other financial aspects of a forfeiture proceeding. It provides that if there is reasonable cause for the seizure, a successful claimant cannot recover costs or recover damages from the person who made the seizure, or from the prosecutor.

If Congress had intended the government not only to return the seized property but also to make the claimant whole for any depreciation in the value of the property during the period of government custody, it presumably would have so stated or indicated. "[A]n implied cause of action for damages against the United States will not be lightly inferred." *Maryland Dep't of Human Resources v. Department of Health and Human Servs.,* 763 F.2d 1441, 1450 (D.C.Cir.1985).

If section 2465 were construed to permit recovery of such damages from the United States, the result would be to that extent to waive the government's immunity from suit. A waiver of sovereign immunity, however, must be clear and explicit and cannot be created by implication or inference. *United States v. King,* 395 U.S. 1,

89 S.Ct. 1501, 23 L.Ed.2d 52 (1969); *Zumerling v. Marsh*, 783 F.2d 1032 (Fed.Cir.1986). "28 U.S.C. § 2465 ... [does not] waive[ ] the United States' sovereign immunity to the type of claim asserted by claimant." *United States v. 2,116 Boxes of Boned Beef*, 726 F.2d 1481, 1491 (10th Cir.), *cert. denied*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984).

Nothing in the legislative history of section 2465 indicates or even suggests that Congress there intended to subject the United States to liability for the depreciation of a properly seized vehicle while in government custody. The major purpose of the statute "is to protect against liability for costs or damages on account of the institution of such proceedings where there is reasonable cause for instituting them." *United States v. Tito Campanella Societa di Navigazione*, 217 F.2d 751, 756 (4th Cir.1954). The requirement that the seized property "shall be returned forthwith to the claimant" cannot properly be interpreted as "mandating compensation by the Federal Government for the damage sustained" (*United States v. Mitchell, supra*) by the claimant as a result of the seizure.

2. The district court in this case relied upon the Sixth Circuit's decision in *One 1965 Chevrolet* because it concluded that the result in that case was "apposite to this set of facts." We think the case is distinguishable and provides no support for the district court's decision.

*One 1965 Chevrolet* involved vehicles that had been forfeited because they had been used in conjunction with violations of the federal wagering tax laws. Following the seizures, the Supreme Court held unconstitutional the statutory provisions pursuant to which the forfeitures were effected. *United States v. United States Coin and Currency*, 401 U.S. 715, 724, 91 S.Ct. 1041, 1046, 28 L.Ed.2d 434 (1971). The court of appeals held that the government was required to pay the owners of the automobiles the amount by which their value had decreased between the seizures and their ultimate return.

The court stated that in the Little Tucker Act "Congress has directly provided for these claims against the Government relative to the unlawful forfeitures." *One 1965 Chevrolet*, 475 F.2d at 885. The court reasoned that "[u]nder the Government's position, the value of the forfeited property could, due to the mere passage of time, decline 50% or 100% and this depreciation would be borne by the owner, notwithstanding a subsequent determination that the forfeiture was void," and that that result would nullify a significant aspect of the Supreme Court's decision in *United States Coin and Currency* "by imposing an irredeemable penalty on owners of depreciable property which was forfeited prior to that decision." *Id.* at 886. The court of appeals' only reference to 28 U.S.C. § 2465 was the rejection without discussion, in a footnote, of the government's contention that that section "prohibits a court from requiring the Government to reimburse an owner for any depreciation of his forfeited automobile, and particularly for depreciation occurring between the seizure and the forfeiture when the forfeiture is later declared void." *Id.* at 886, n. 3.

*One 1965 Chevrolet* was decided before the Supreme Court held in *Mitchell* that the Tucker Act "does not create any substantive right enforceable against the United States for money damages." 463 U.S. at 216, 103 S.Ct. at 2967. To whatever extent the Sixth Circuit's decision rested upon the contrary view, its precedential value has been vitiated. Moreover, the court dealt with section 2465 only in passing, and the government's argument was that the section prohibited the award of damages rather than, as here, that it does not authorize the award. The court of appeals gave no reason for rejecting the government's contention. *One 1965 Chevrolet* does not support the district court's decision in this case.

3. Baker further argues that he really is seeking recoupment rather than damages, and that the grounds upon which the government opposes his claim are inapplicable. The Tenth Circuit has rejected this argument, holding that since "the government was seeking only seizure and condemnation remedies[,] [r]ecoupment, therefore,

may not serve as the basis of a claim for money damages arising out of this seizure action." *United States v. 2,116 Boxes of Boned Beef,* 726 F.2d 1481, 1490 (10th Cir.), *cert. denied,* 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). We have no reason to disagree with that conclusion.

■ **B.** The government's possession of the vehicle between the seizure and the jury verdict was not a taking of the vehicle for which Baker was entitled to just compensation.

The Supreme Court has emphasized that three factors principally guide the inquiry in takings analysis. These factors are the character of the governmental action, its economic impact, and its interference with reasonable investment expectations. *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1005, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984); *Pruneyard Shopping Center v. Robbins,* 447 U.S. 74, 83, 100 S.Ct. 2035, 2041, 64 L.Ed.2d 741 (1980); *Kaiser Aetna v. United States,* 444 U.S. 164, 175, 100 S.Ct. 383, 390, 62 L.Ed.2d 332 (1979). Depending on the circumstances of a particular case, any one of the three factors may be controlling. *See Monsanto,* 467 U.S. at 1005, 104 S.Ct. at 2874.

In *Colero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974), the Supreme Court rejected the claim that the forfeiture, pursuant to a Puerto Rican statute, of a leased yacht used in connection with a narcotics violation where the owner/lessor of the yacht was unaware of its illegal use, constituted a taking of the yacht for which the owner was entitled to just compensation. The Court first rejected the contention that the seizure of the yacht, without prior notice and hearing, denied the owner due process. It pointed out that "[s]eizure permits Puerto Rico to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions." *Id.* at 679, 94 S.Ct. at 2089–90. (footnote omitted). It then stated that

the Puerto Rican forfeiture statutes further the punitive and deterrent purposes that have been found sufficient to uphold, against constitutional challenge, the application of other forfeiture statutes to the property of innocents. Forfeiture of conveyances that have been used—and may be used again—in violation of the narcotics laws fosters the purposes served by the underlying criminal statutes, both by preventing further illicit use of the conveyance and by imposing an economic penalty, thereby rendering illegal behavior unprofitable.

*Id.* at 686–87, 94 S.Ct. at 2093–94 (footnote omitted).

The governmental interest that the seizure and temporary possession of Baker's vehicle served, is similar to and no less strong than the governmental interest upon which the Court relied in *Colero-Toledo* in holding that the forfeiture of property of an innocent owner used in narcotics violations did not effect a taking of the owner's property. It enabled the government "to assert *in rem* jurisdiction over the property in order to conduct forfeiture proceedings, thereby fostering the public interest in preventing continued illicit use of the property and in enforcing criminal sanctions." 416 U.S. at 679, 94 S.Ct. at 2089–90.

In the present case, the interval between the seizure and the forfeiture proceedings apparently reflected the time required to initiate and settle the criminal case growing out of the narcotics violation. The fact that the jury ultimately found that the vehicle had not been used to facilitate a narcotics transaction did not make the government seizure and possession of the vehicle until the forfeiture proceeding was completed any less proper, or convert that seizure into a taking. The district court found that there was probable cause for the seizure, and the government was fully justified and had a strong interest in seeking a forfeiture of the vehicle that it believed had been illegally used.

Indeed, the present case is even stronger than *Colero-Toledo* for holding that there was no taking. Here the government

merely had temporary possession of the vehicle until the forfeiture proceeding was completed; the vehicle was not forfeited but was returned to the owner; the district court found that the government had probable cause for the seizure; and the owner of the vehicle was not innocent but was directly involved in the narcotics transaction that led to the seizure. In these circumstances, the government's temporary possession of the vehicle did not constitute a taking.

### CONCLUSION

The portion of the judgment of the district court determining that Baker is entitled to $4,050 as damages is

REVERSED.