NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JOHN DOE, INDIVIDUALLY AND ON BEHALF OF OTHERS SIMILARLY SITUATED,**
*Plaintiff-Appellant*

**v.**

**JOSEPH R. BIDEN, JR., IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE UNITED STATES, MERRICK B. GARLAND, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE UNITED STATES, MARVIN G. RICHARDSON, ACTING DIRECTOR, BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES,**
*Defendants-Appellees*

_____

2022-1197

_____

Appeal from the United States District Court for the Southern District of Illinois in No. 3:19-cv-00006-SMY, Judge Staci M. Yandle.

_____

Decided: October 31, 2022

_____

THOMAS G. MAAG, Maag Law Firm, Llc, Wood River, IL, argued for plaintiff-appellant.

BRADLEY HINSHELWOOD, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendants-appellees. Also represented by BRIAN M. BOYNTON, MICHAEL S. RAAB, MARK B. STERN, ABBY CHRISTINE WRIGHT.

————————————

Before CHEN, CUNNINGHAM, and STARK, *Circuit Judges.*

PER CURIAM.

In 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives issued a rule classifying bump-stock-type devices as "machineguns" under the National Firearms Act of 1934. Bump-Stock-Type Devices, 83 Fed. Reg. 66,514 (Dec. 26, 2018) ("Final Rule"). John Doe filed suit, alleging that the rule is contrary to law or, in the alternative, constitutes a taking without just compensation. Mr. Doe now appeals from the Southern District of Illinois's grant of summary judgment on all counts for the Government. *See Doe v. Trump*, Case No. 3:19-cv-6-SMY, 2021 WL 4441462 (S.D. Ill. Sept. 28, 2021). We *affirm*.

## I. BACKGROUND

### A. The Rule at Issue

In recent years, companies have manufactured "firearms, triggers, and other devices that permit shooters to use semiautomatic rifles to replicate automatic fire . . . ." Final Rule, 83 Fed. Reg. at 66,515–16. Among these devices have been what ATF terms "bump-stock-type device[s]," which "allow[] a semi-automatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semi-automatic firearm to which it is affixed so that the trigger resets and continues firing without additional physical manipulation of the trigger by the shooter." *Id.* at 66,553–54.

For about a decade, ATF issued a number of decisions determining whether certain bump-stock-type devices constituted "machineguns" under the National Firearms Act of 1934, Pub. L. 73-474, 48 Stat. 1236. Final Rule, 83 Fed. Reg. at 66,516. Between 2006 and 2017, ATF concluded that some bump-stock-type devices did constitute "machineguns" while others (i.e., those which "did not rely on internal springs or similar mechanical parts to channel recoil energy") did not. *Id.* The bump-stock-type devices ATF previously did not classify as machineguns ("Previously Excluded Devices") could be sold without serial numbers, without the buyers undergoing prior background checks, and without the need to comply with "any other Federal regulations applicable to firearms." *Id.*

On October 1, 2017, a shooter attacked a concert in Las Vegas. *Id.* In a short period of time, the shooter killed 58 people and wounded about 500 others. *Id.* The shooter used AR-type rifles equipped with Previously Excluded Devices. *Id.*

In the wake of this tragedy, following notice and comment, ATF amended the regulations at 27 C.F.R. §§ 447.11, 478.11, and 479.11 to include Previously Excluded Devices in the agency's definition of "machineguns." *Id.* at 66,517-18, 66,553–54. Two aspects of the Final Rule are relevant to this appeal.

First, ATF noted in the Final Rule that the classification of bump-stock-type devices, including Previously Excluded Devices, as "machineguns" would result in "current possessors of bump-stock-type devices [being] obligated to cease possessing these devices." *Id.* at 66,520. This obligation arises from 18 U.S.C. § 922(o), which "with limited exceptions, prohibits the possession of machineguns that were not lawfully possessed before the effective date of" § 922(o) in 1986. *Id.*; *see* Firearms Owners' Protection Act, Pub. L. 99-308, § 102, 100 Stat. 449, 453 (1986). Owners of Previously Excluded Devices would therefore be obligated

to either destroy their devices or abandon them at ATF offices.  Final Rule, 83 Fed. Reg. at 66,530.

Second, ATF rejected commenters' proposal for the agency to announce an amnesty period under § 207(d) of the Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213, 1236.  Final Rule, 83 Fed. Reg. at 66,535–36.  Section 207(d) provides that ATF can declare "such periods of amnesty, not to exceed ninety days in the case of any single period, and immunity from liability during any such period, as the [agency] determines will contribute to the purposes of" Title II of the Gun Control Act.[1]  Title II includes a variety of provisions relating to the registration of firearms in the National Firearms Registration and Transfer Record (NFRTR) and the taxation of those firearms.  82 Stat. at 1227–36.  Commenters argued that during an amnesty period, owners of Previously Excluded Devices would be allowed to register their devices in the NFRTR, which ATF maintains, and therefore be allowed to continue possessing their newly registered devices.  Final Rule, 83 Fed. Reg. at 66,535–36.  ATF concluded that the commenters' proposal was not possible because the enactment of § 922(o) "eliminated any possible amnesty for

---

[1]    Section 207(d) originally gave this authority to the Secretary of the Treasury, who oversaw ATF's predecessor agency, the Bureau of Alcohol, Tobacco and Firearms.  In 2002, however, Congress "transferred to the Department of Justice the authorities, functions, personnel, and assets of the Bureau of Alcohol, Tobacco and Firearms, . . . including the related functions of the Secretary of the Treasury."  Homeland Security Act of 2002, Pub. L. 107-296, § 1111(c)(1), 116 Stat. 2135, 2275 (codified as amended at 28 U.S.C. § 599A(c)(1)).  The Attorney General has, in turn, delegated to the Director of ATF the authority to "administer . . . the laws relating to . . . firearms," a category that includes § 207(d).  28 C.F.R. § 0.130(a).

machineguns." *Id.* at 66,536. The agency wrote that because § 922(o) would prevail over any earlier conflicting statute, including § 207(d), "any future amnesty period could not permit the lawful possession and registration of machineguns prohibited by section 922(o)." *Id.*

## B.  The Proceedings Below

Shortly after ATF issued the Final Rule, Mr. Doe[2] filed suit in the Southern District of Illinois, alleging that ATF's decision to not declare an amnesty-and-registration period for Previously Excluded Devices violated the Administrative Procedure Act. Compl. 1–35. Mr. Doe raised five arguments challenging ATF's decision as contrary to law: (1) § 922(o) does not prohibit an amnesty-and-registration period; (2) § 922(o) is facially unconstitutional because it exceeds Congress's authority under the Commerce Clause; (3) § 922(o) is unconstitutional as applied to firearms registered in the NFRTR because it exceeds Congress's authority under the Commerce Clause; (4) § 922(o) is unconstitutional under the Direct Tax Clause, U.S. Const. art. I, § 9, cl. 4; and (5) § 922(o) violates the Due Process Clause, U.S. Const. amend. V. *Id.* at 1–35. Alternatively, Mr. Doe alleged that the Final Rule constituted a taking requiring just compensation. *Id.* at 35–37.

The district court granted summary judgment for the Government on all counts. *Doe*, 2021 WL 4441462, at \*7. First, the district court held that "an amnesty period would clearly violate § 922(o)'s prohibition on machineguns" because "the intent of § 922(o) was to limit transactions in post-1986 machineguns." *Id.* at \*3–4 (citing cases). Second, the district court rejected Mr. Doe's two Commerce

---

[2]    Mr. Doe has invoked his right against self-incrimination under the Fifth Amendment and is proceeding under a pseudonym. Compl. ¶ 3, *Doe v. Trump*, Case No. 3:19-cv-6-SMY (S.D. Ill. Jan. 2, 2019).

Clause arguments. *Id.* at \*4–5. Specifically, the district court concluded that the Seventh Circuit had previously rejected a Commerce Clause challenge to § 922(o) in *United States v. Kenney*, 91 F.3d 884, 891 (7th Cir. 1996); other circuits had upheld § 922(o) as regulating an activity that "substantially affect[s] interstate commerce" as outlined in *Gonzales v. Raich*, 545 U.S. 1 (2005); and Mr. Doe had provided no basis to differentiate his claims. *Id.* at \*4–5 (citing cases from various circuits). Third, the district court held that Mr. Doe's direct tax argument fails because "§ 922(o) does not impose any tax" and the tax that Mr. Doe challenges is a constitutional excise tax. *Id.* at \*5–6. Fourth, as to Mr. Doe's due process claim, the district court held that a rational basis standard of review applies because he has no fundamental right to possess a machinegun and no suspect classification is implicated. *Id.* at \*6. And the district court concluded that a rational basis exists here because there "is nothing irrational about Congress differentiating between machinegun possession by law enforcement and possession by civilians" under § 922(o). *Id.* Fifth, the district court rejected Mr. Doe's takings claim because the "classification and seizure of contraband is one of the most basic exercises of the police power—it does not implicate the Takings Clause," U.S. Const. amend. V. *Id.* at \*7.

Mr. Doe appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(2).

## II. DISCUSSION

Mr. Doe challenges the district court's grant of summary judgment as to (1) the proper interpretation of § 922(o), (2) his challenge under the Commerce Clause, (3) his challenge under the Direct Tax Clause, and (4) his takings claim. Appellant's Br. 8–10. He does not challenge the district court's conclusion that § 922(o) does not violate the Due Process Clause. *See generally id.* We address each of Mr. Doe's arguments in turn.

### A. Standard of Review

We apply the law of the regional circuit to the merits of claims not arising under our exclusive jurisdiction, such as Mr. Doe's APA challenges. *United States v. One (1) 1979 Cadillac Coupe de Ville VIN 6D4799266999*, 833 F.2d 994, 997 (Fed. Cir. 1987). In this case, the regional circuit is the Seventh Circuit, which reviews de novo a grant of summary judgment. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). We apply Federal Circuit law to Mr. Doe's takings claim, which arises under the Little Tucker Act, 28 U.S.C. § 1346. *One (1) 1979 Cadillac*, 833 F.2d at 997. Like the Seventh Circuit, we review a grant of summary judgment de novo. *Bullock v. United States*, 10 F.4th 1317, 1320 (Fed. Cir. 2021).

### B. Section 922(o)

Mr. Doe contends that the district court, like ATF, erred in concluding that § 922(o) bars the agency from declaring an amnesty-and-registration period for Previously Excluded Devices following the Final Rule. Appellant's Br. 18–39. First, Mr. Doe argues an exception to § 922(o) permits an amnesty-and-registration period. Appellant's Br. 24–35. Second, Mr. Doe contends that § 922(o) should not act as a barrier to an amnesty-and-registration period because once a private citizen registers a firearm in the NFRTR, he receives "use immunity" for any information provided for registration. Appellant's Br. 35–38; *see* 26 U.S.C. § 5848(a).

We disagree with Mr. Doe's "use immunity" argument. Use immunity limits the evidence that could be used in a future prosecution; it does not make contraband legal. *See, e.g.*, Immunity, Black's Law Dictionary (11th ed. 2019) (defining "use immunity" as "[i]mmunity from the use of the compelled testimony . . . in a future prosecution against the witness" and noting that "the government can still prosecute if it shows that its evidence comes from a legitimate

independent source"). Use immunity therefore has no effect on § 922(o)'s prohibition on machinegun possession.

Next, we turn to Mr. Doe's argument that an exception applies. Section 922(o) states:

> (1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
>
> (2) This subsection does not apply with respect to—
>
>> (A) a transfer to or by, or possession by or *under the authority of, the United States* or any department or agency thereof *or a State*, or a department, agency, or political subdivision thereof; or
>>
>> (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.

18 U.S.C. § 922(o) (emphasis added). Mr. Doe contends that if individuals possess a Previously Excluded Device "under the authority of" the United States or a state, then the exception found at § 922(o)(2)(A) applies and § 922(o) does not bar the Attorney General from declaring an amnesty-and-registration period. Appellant's Br. 25. He argues that there are two ways for him to possess a Previously Excluded Device "under the authority of" the United States or a state. We reject each argument below.

### 1.    Registration as Authorization

Mr. Doe asserts that individuals would possess their Previously Excluded Devices "under the authority of the United States" after registering them in the NFRTR during an amnesty period. Appellant's Reply Br. 9; *see also* Oral Arg. at 08:07–23, available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=22-1197_0804202 2.mp3. The Government disagrees with this broad reading

of § 922(o)(2)(A).     It argues that the exemption at § 922(o)(2)(A) "instead applies to the possession of new machineguns by or for the official use of governmental entities like the military or state and federal law enforcement." Appellee's Br. 17.  The Government argues that a private citizen could not legally possess a Previously Excluded Device merely by registering it.  Appellee's Br. 17.  We agree with the Government.

We must address a question of statutory interpretation:  Can ATF permit a private citizen to possess a Previously Excluded Device "under the authority of" the United States by allowing him to register the device?  *See, e.g.*, Appellant's Br. 24-28; Appellee's Br. 17-21.  To answer this question, we start with "a careful examination of the ordinary meaning and structure of the law itself." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019). Here, the ordinary meaning of the statute does not resolve the dispute—§ 922(o)(2)(A) does not expressly say who can possess a Previously Excluded Device "under the authority of" the United States.  Accordingly, we turn to the structure of the law.

When interpreting a statute, we "must have regard to all the words used by Congress, and as far as possible give effect to them." *United States v. Atl. Rsch. Grp.*, 551 U.S. 128, 137 (2007) (quoting *Louisville & Nashville R. Co. v. Mottley*, 219 U.S. 467, 475 (1911)).  The core problem with Mr. Doe's argument is that it renders § 922(o)(1), prohibiting the possession and transfer of machineguns (including Previously Excluded Devices) a nullity, at least for the proposed amnesty period.  *See Farmer v. Higgins*, 907 F.2d 1041, 1044 (11th Cir. 1990) (concluding similarly).  If a person who registers a machinegun in the NFRTR possesses the machinegun "under the authority of" the United States, then ATF "would be required to process applications without regard to section 922(o)(1), and reach the same result as if the prohibition had never been enacted." *Id.*  Therefore, interpreting § 922(o) as conferring authorization to

possess on a person is incorrect. *Id.* After all, before Congress enacted § 922(o) it was already illegal to "receive or possess a firearm which [was] not registered to him in the [NFRTR]." 26 U.S.C. § 5861(d). In other words, if ATF could declare an amnesty period to allow individuals to register and keep their machineguns, then § 922(o) would have no effect on possession independent of § 5861(d). In sum, we agree with the Eleventh Circuit that Congress intended for the phrase "under the authority" in § 922(o)(2)(A) "to limit lawful transfer and possession of machine guns to instances authorized by the government for the benefit of federal, state, or local governmental entities." *Farmer*, 907 F.2d at 1045.

Mr. Doe urges us to consider the legislative history of § 922(o). Appellant's Br. 27–29. He notes that during Senate debate of § 922(o), Senator Bob Dole asked whether "an amnesty period [can] be declared administratively . . . under current law," to which Senator Orrin Hatch responded, "[a]bsolutely." Appellant's Br. 28 (citing 132 Cong. Rec. 9601 (1986)).[3] Mr. Doe asserts that Senator Hatch's response shows that Congress did not intend for § 922(o) to preclude the declaration of amnesty-and-registration periods for machineguns. *Id.*

But Mr. Doe's selective reading of the legislative history omits key passages that indicate the Senate did not contemplate private citizens possessing machineguns. Rather, the legislative history confirms that Congress understood § 922(o)(2)(A) to permit possession for the benefit of the government, not possession by private citizens. Senator Frank Lautenberg explained that § 922(o) would "bar[] future sales and possession of machineguns by private citizens." 132 Cong. Rec. at 9605. And Senator Hatch

---

[3]   Although Mr. Doe cites to the daily edition of the *Congressional Record*, we cite to the corresponding page of the bound edition.

explained that § 922(o) would permit manufacturers and firearms dealers to sell machineguns to the government for "military or police use," while allowing researchers to possess machineguns "for military or law enforcement purposes." *Id.* at 9600. He also stated that while § 922(o) would permit a police force to authorize an officer to privately purchase and register a machinegun for use in his duties, the police force would need to "exercise its authority to guarantee that the machinegun was transferred to another entity authorized by the State or the United States to possess such weaponry" if the officer left his job. *Id.* at 9601. The implication is that when a police officer returns to being a private citizen, he is no longer "authorized" to possess the machinegun, even if it is registered. *See id.*

Thus, we agree with ATF that § 922(o)(2)(A) does not give the agency authority to enact an amnesty-and-registration period for Previously Excluded Devices. *See* 83 Fed. Reg. at 66,536.

## 2. Authorization as a Police Officer

Mr. Doe contends that he possesses his Previously Excluded Device "under the authority of" the state of Illinois because he is a police officer. Appellant's Br. 32–35. He argues that he falls into the exception under § 922(o)(2)(A) because Illinois law allows police officers to possess machineguns.[4] Appellant's Br. 33–34; *see* 720 Ill. Comp. Stat. 5/24-1(a)(7)(i) (prohibiting possession of a machinegun),

---

[4]    Although counsel stated at oral argument that Mr. Doe is currently a police officer, Oral Arg. at 23:38–53, the record indicates only that he was a police officer when the case was filed, *see* Doe Affidavit ¶ 3, *Doe v. Trump*, Case No. 3:19-cv-6-SMY (S.D. Ill. May 15, 2020), ECF No. 48-1, Ex. J ("At the time this case was filed, I was an active duty police officer, serving in Illinois, and holding the rank of Colonel.").

5/24-2(c)(1) (excluding police officers from prohibition on possession of a machinegun). We also reject this argument.

As addressed above, § 922(o)(2)(A) permits a police officer to possess a machinegun "under the authority" of state law. But even accepting that Illinois law authorizes police officers to possess machineguns such that § 922(o)(2)(A) applies, it does not follow that ATF could adopt an amnesty-and-registration period for all private citizens. Indeed, an amnesty-and-registration period is not necessary to register even a police officer's machinegun. Under 27 C.F.R. § 479.104, a police department that "acquires for official use a firearm not registered to it . . . will register such firearm with [ATF] . . . and such registration shall become a part of the [NFRTR]." Thus, Illinois law and Mr. Doe's status under it have no bearing on whether ATF could declare an amnesty-and-registration period for all private citizens.

Accordingly, we reject Mr. Doe's arguments that an exception to § 922(o) permits ATF to declare an amnesty-and-registration period for the Previously Excluded Devices.

## C.   The Constitutionality of § 922(o)

Mr. Doe argues that § 922(o) is unconstitutional—and thus, cannot bar an amnesty-and-registration period—for two reasons. Appellant's Br. 39–55. First, he contends that § 922(o) is beyond the scope of Congress's power under the Commerce Clause. Appellant's Br. 39–51. Second, he argues that § 922(o) is an unconstitutional "direct tax." Appellant's Br. 51–55. We address each argument in turn.

### 1.  Commerce Clause

Mr. Doe argues that the private possession of machineguns does not affect interstate commerce because machineguns, especially those lawfully registered machineguns with serial numbers and other identifiers, are not fungible. Appellant's Br. 43–45. We disagree.

The Commerce Clause gives Congress the authority to "regulate Commerce . . . among the several States." U.S. Const., art. I, § 8, cl. 3. The Supreme Court has explained that under this clause, Congress can regulate (1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce," and (3) "those activities having a substantial relation to interstate commerce, *i.e.*, those activities that substantially affect interstate commerce." *United States v. Lopez*, 514 U.S. 549, 558–59 (1995) (citations omitted). The Seventh Circuit has upheld § 922(o) under the third of these prongs. *Kenney*, 91 F.3d at 889–90. Specifically, the Seventh Circuit held that "there is a rational basis to regulate the local conduct of machine gun possession . . . to effectuate § 922(o)'s purpose of freezing the number of legally possessed machine guns at 1986 levels, an effect that is closely entwined with regulating interstate commerce." *Id.* at 890. The court reached this conclusion by analogizing to *Wickard v. Filburn*, 317 U.S. 111 (1942), in which the Supreme Court upheld Congress's authority to regulate the number of acres on which a farmer could grow wheat, even though growing wheat is a local activity that "may not be regarded as commerce." *Kenney*, 91 F.3d at 890 (quoting *Wickard*, 317 U.S. at 125). We are bound by Seventh Circuit precedent on this issue. *One (1) 1979 Cadillac*, 833 F.2d at 997. Thus, we must follow *Kenney* and similarly hold that § 922(o) is constitutional unless there has been an intervening change in law.

Mr. Doe appears to argue that such a change occurred in *Raich*. Appellant's Br. 43–45. There, the Supreme Court upheld enforcement of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.*, against individuals who possess, obtain, or manufacture cannabis for personal medical use. *Raich*, 545 U.S. at 7, 32–33. Like in *Kenney*, the Court endorsed the law at issue as a constitutional regulation of "activities that substantially affect interstate commerce." *Id.* at 17. Like in *Kenney*, the Court analogized to *Wickard*.

*Id.* at 18–19.  Unlike in *Kenney*, however, the Court emphasized that the wheat in *Wickard*, like the cannabis in *Raich*, was a "fungible commodity."  *Id.* at 18, 22.  It is this language that Mr. Doe contends is an intervening change in law.  He argues that under *Raich* non-fungible goods fall outside Congress's Commerce Clause power.  Appellant's Br. 43.  And he asserts that machineguns are non-fungible because they have serial numbers.  Appellant's Br. 43–44.  We are unpersuaded.  Rather, we conclude that, even if *Raich* is an intervening change in law, it is not a relevant change in law because machineguns are fungible.

We are not the first court to address the fungibility of machineguns under *Raich*.  For example, in *United States v. Stewart*, the Ninth Circuit rejected a challenge to § 922(o) like Mr. Doe's.  451 F.3d 1071, 1078 (9th Cir. 2006), *overruled on another ground by Dist. of Columbia v. Heller*, 554 U.S. 570, 594–95 (2008).  The Ninth Circuit noted that "at some level, everything is unique; fungibility is a matter of degree."  *Id.* at 1077–78.  And the court concluded that even unique machineguns are "economic substitutes" because "those seeking machineguns care only whether the guns . . . discharge large amounts of ammunition with a single trigger pull."  *Id.* at 1078.  As a result, the Ninth Circuit held that machineguns are "interchangeable" and, thus, fungible.  *Id.*

We find *Stewart* persuasive and conclude that the Previously Excluded Devices are fungible.  Even if Previously Excluded Devices are distinguishable based on their serial numbers or other markings, that does not mean they cannot "substantially affect interstate commerce" as economic substitutes that "can enter the interstate market and affect supply and demand" for machineguns.  *Id.*  Indeed, the Previously Excluded Devices are not necessarily distinguishable—the Government notes that serial numbers can be obliterated, Appellee's Br. 27, and the Final Rule stated that certain bump-stock-type devices have been sold without "a serial number or other identification markings,"

Final Rule, 83 Fed. Reg. at 66,516. As such, we conclude that *Raich* did not amount to a relevant intervening change in law and that, as the Seventh Circuit has held, § 922(o) is constitutional under the Commerce Clause. *See Kenney*, 91 F.3d at 889–90.

### 2.  Direct Tax

Mr. Doe also contends that § 922(o) is unconstitutional because it imposes a direct tax. Appellant's Br. 51–55. He notes that ATF understands § 922(o)(2)(A)'s exception to extend to individuals who "possess machineguns produced for future transfer to the government." Appellant's Br. 51. Mr. Doe therefore contends that an owner of a Previously Excluded Device could keep his device if he registered as a firearms dealer. Appellant's Br. 52–53. But, Mr. Doe argues, firearms dealers must pay an annual special occupational tax. Appellant's Br. 52. He asserts that such a tax imposed "on the retained possession of the post-86 machinegun" would be an unconstitutional direct tax. *Id.* (emphasis omitted).

Mr. Doe's argument fails for a very simple reason: § 922(o) imposes no tax. Rather, the tax that Mr. Doe complains of is codified at 26 U.S.C. § 5801(a)(2), which provides that dealers of firearms must pay an annual tax of $500 "or fraction thereof." Mr. Doe provides no reason why § 5801(a)(2)'s occupational tax means that we must hold § 922(o) unconstitutional. *See* Appellant's Br. 51–55. Nor do we know of any basis for reaching such a conclusion. Accordingly, we affirm the district court's grant of summary judgment as to his direct tax claim.

### D. Takings Claim

Finally, we turn to whether the Final Rule is an unconstitutional taking. As Mr. Doe acknowledges, we have previously held that the Final Rule does not constitute a taking because owners did not have a cognizable property interest in their Previously Excluded Devices prior to

issuance of the Final Rule. *McCutchen v. United States*, 14 F.4th 1355, 1368 (Fed. Cir. 2021); *see* Appellant's Reply Br. 18.

In his reply brief, Mr. Doe raises two arguments for departing from *McCutchen*. Appellant's Reply Br. 19. First, Mr. Doe asserts that here, unlike in *McCutchen*, he has disputed the validity of the Final Rule. *Id.* Second, Mr. Doe argues that *McCutchen* erroneously discussed only "title" in Previously Excluded Devices even though § 922(o) prohibits "possession" of machineguns. *Id.* Because these arguments were not raised in his opening brief, however, he has forfeited them. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danke, Inc.*, 424 F.3d 1293, 1320 n.3 (Fed. Cir. 2005) (declining to consider arguments not raised in the opening brief). We therefore do not consider them and conclude that the district court properly granted summary judgment as to Mr. Doe's takings claim.

## III. CONCLUSION

We are unpersuaded by Mr. Doe's remaining arguments. For the above reasons, we reject each of Mr. Doe's arguments on appeal. Accordingly, we *affirm*.

**AFFIRMED**